# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | | |
|---|---|---|
| **DAVID LYNN JORDAN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **No. 17-1159-STA-jay** |
| **v.** | ) | |
| | ) | |
| **TONY MAYS,** | ) | |
| | ) | |
| **Respondent.** | ) | |

---

## ORDER GRANTING IN PART AND DENYING IN PART
## PETITIONER'S HABEAS RULE 6 MOTION FOR DISCOVERY

---

Before the Court are Petitioner David Lynn Jordan's Habeas Rule 6 Motion for Discovery and supporting memorandum (*see* ECF No. 51); the Response in Opposition to Petitioner's Motion for Discovery (ECF No. 52); and Petitioner's Reply In Support of His Motion for Discovery (ECF No. 56). Petitioner was convicted and sentenced to death for three counts of first degree premeditated murder; two counts of felony murder; two counts of attempted first degree murder; two counts of aggravated assault; and one count of leaving the scene of an accident in connection with the January 11, 2005 shooting at a Tennessee Department of Transportation ("TDOT") facility in Jackson, Tennessee ("the TDOT shootings") during which Petitioner murdered his wife Renee Jordan and others. *See Jordan v. State*, No. W2015-00698-CCA-R3-PD, 2016 WL 607853, at \*1 (Tenn. Crim. App. Oct. 14, 2016). Petitioner now seeks discovery to support his federal habeas claims. For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Petitioner's Habeas Rule 6 Motion for Discovery.

# I.      DISCOVERY GRANTED

On November 6, 2019, based on the Joint Statement filed by the parties, the Court granted Petitioner the following discovery:

1.  The case file in *State v. Jordan*, Indictment No. 05-431, from the Office of the District Attorney General, 26th Judicial District;

2.  The Tennessee Bureau of Investigation's case file in Jordan's case;

3.  The case file from the Jackson Police Department in Jordan's case; and

4.  The case file from the Madison County Sheriff's Department in Jordan's case.

(*See* ECF No. 46 at PageID 10978.)

# II.     THE HABEAS DISCOVERY STANDARD

Habeas petitioners do not have an automatic right to discovery.  *See Johnson v. Mitchell*, 585 F.3d 923, 934 (6th Cir. 2009) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)). Discovery in habeas cases is controlled by Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), which states: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."  *See Cornwell v. Bradshaw*, 559 F.3d 398, 410 (6th Cir. 2009) ("For good cause shown, the district court has the discretion to permit discovery in a habeas proceeding . . .."). Habeas Rule 6 is meant to be "consistent" with the Supreme Court's decision in *Harris v. Nelson*, 394 U.S. 286 (1969).  *Bracy v. Gramley*, 520 U.S. 899, 909 (1997).  In *Harris*, the Court stated:

> [W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.

*Harris*, 394 U.S. at 300.

"Good cause" is not demonstrated by "bald assertions" or "conclusory allegations." *Stanford*, 266 F.3d at 460; *see also Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004). Rather, the requested discovery must be materially related to claims raised in the habeas petition and likely to "resolve any factual disputes that could entitle [the petitioner] to relief." *Williams*, 380 F.3d at 975 (quoting *Stanford*, 266 F.3d at 460) (internal quotation marks omitted). A district court may permit discovery if the "petitioner presents specific allegations showing reason to believe that the facts, if fully developed, may lead the district court to believe that federal habeas relief is appropriate." *Stojetz v. Ishee*, 892 F.3d 175, 207 (6th Cir. 2018); *see Bracy*, 520 U.S. at 908–09 (allowing discovery relevant to "specific allegations" of fact in support of a claim of constitutional error); *Post v. Bradshaw*, 621 F.3d 406, 425 (6th Cir. 2010) (stating that discovery provides petitioner "that extra evidence he . . . needs to prove or strengthen his case"); *Braden v. Bagley*, No. 2:04-CV-842, 2007 WL 1026454, at *2 (S.D. Ohio Mar. 30, 2007) ("Rule 6's 'good cause' standard requires petitioner to at least attempt to identify what he expects to uncover through his discovery requests.").[1] Although "more liberal discovery is appropriate in capital [habeas] cases," *Payne v. Bell*, 89 F. Supp. 2d 967, 971 (W.D. Tenn. 2000) (citing *Lockett v. Ohio*, 438 U.S. 586, 604 (1978)), Rule 6(a) does not permit a "fishing expedition masquerading as discovery. *Stanford*,

---

[1] A petitioner may show good cause under Habeas Rule 6 without meeting the higher standard for an evidentiary hearing set forth in 28 U.S.C. § 2254(e)(2). *Payne v. Bell*, 89 F. Supp. 2d 967, 970 (W.D. Tenn. 2000); *see Braden*, 2007 WL 1026454, at *6 (distinguishing discovery from factual development under § 2254(e)(2)); *see also Simmons v. Simpson,* No. 3:07-CV-313-S, 2009 WL 4927679, at *5-6 (W.D. Ky. Feb. 12, 2009) (stating that this view is not unanimously held by all federal courts). "The Sixth Circuit has not determined whether § 2254(e)(2) applies to motions for discovery." *Hill v. Anderson*, No. 4:96CV0795, 2010 WL 5178699, at *8 (N.D. Ohio Dec. 14, 2010).

266 F.3d at 460.  "[V]ague musings" about how facts might relate to the claims are not sufficient to satisfy the "good cause" standard.  *Stojetz*, 892 F.3d at 207.

### A.    Exhausted Claims

A federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies by presenting the same claim sought to be redressed in a federal habeas court to the state courts.  28 U.S.C. § 2254(b) & (c); *see Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Habeas review under 28 U.S.C. § 2254(d)(1) for claims adjudicated in the state courts on the merits is limited to the state court record, and no evidentiary hearing is required.  *Id.* at 182-183; *Ballinger v. Prelesnik*, 709 F.3d 558, 561 (6th Cir. 2013).  *Pinholster* "did not, strictly speaking, alter or even speak to the standards governing [Rule 6] discovery," and *Pinholster*'s restrictions should not be invoked at the discovery phase.  *Conway v. Houk*, No. 2:07-cv-947, 2011 WL 2119373, at *3 (S.D. Ohio May 26, 2011); *Jones v. Bagley*, 696 F.3d 475, 486 n.4 (6th Cir. 2012) (stating that, if Petitioner could establish a *Brady*[2] violation with the introduction of new evidence discovered in the federal habeas proceedings, introduction of that evidence would not violate *Pinholster*); *Hannah v. Ishee*, 694 F.3d 596, 609-610 (6th Cir. 2012) ("new evidence might transform a previously unexhausted claim into a 'new claim' nevertheless appropriate for federal habeas review"); *see Pike v. Johnson*, No. 1:12–cv–35, 2013 WL 2457718, at *3-4 (E.D. Tenn. June 6, 2013) ("While *Cullen v. Pinholster* limits the scope of review under § 2254(d)(1), it says nothing about the court's discretion to allow discovery); *see Williams v. Houk*, No. 4:06-cv-451, 2012 WL 6607008, at *4 (N.D. Ohio Dec. 18,

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

4

2012) ("There is no clear guidance from either the Supreme Court or the Sixth Circuit regarding how *Pinholster* applies to the availability of discovery in federal habeas proceedings."); *see also Group v. Robinson*, 132 F. Supp. 3d 954, 960 (N.D. Ohio Sept., 18, 2014) ("The Supreme Court and the Sixth Circuit have not declared," based on *Pinholster*, whether a habeas petitioner can stage discovery on a claim adjudicated on the merits in state court.).  There are certain situations where *Pinholster* would not bar new evidence from being considered in a federal habeas proceeding including: (1) where a state court did not address a claim "on the merits" and the federal court must conduct a *de novo* review; (2) where a federal court must consider new evidence on an unexhausted claim to decide whether there is cause and prejudice or actual innocence to excuse procedural default; and (3) where after review solely on the state-court evidence, the federal court determines that the state court contravened or unreasonably applied clearly established federal law. *See Caudill v. Conover*, 871 F. Supp. 2d 639, 649 (E.D. Ky. 2012).  At this point in the proceedings, the basis on which Petitioner will seek habeas relief for each claim is unclear, and the Court will not use *Pinholster* as an absolute bar to discovery on claims previously adjudicated in state court.

### B.    Procedurally Defaulted Claims

There is no clear entitlement to discovery in support of procedurally defaulted habeas claims.  *See Williams,* 380 F.3d at 975–76 (finding no error in district court's denial of discovery on procedurally defaulted ineffective assistance of counsel claims); *Royal v. Taylor*, 188 F.3d 239, 249 (4th Cir. 1999) (finding no error in district court's denial of discovery on procedurally defaulted due process claims); *Calderon v. U.S. Dist. Court for the N. Dist. of Ca.*, 98 F.3d 1102, 1106 (9th Cir. 1996) (issuing mandamus to prevent discovery awarded by district court because petitioner had not filed a habeas petition with exhausted claims or sought such discovery in the

state court); *Sherman v. McDaniel*, 333 F. Supp. 2d 960, 969–70 (D. Nev. 2004) (denying discovery on unexhausted claims because "[t]o do so would tend to undermine the exhaustion requirement, and the doctrine of federal-state comity on which it rests"). *But see Conway v. Houk,* No. 3:07-cv-345, 2009 WL 961199, at *3 (S.D. Ohio Apr. 8, 2009) ("So long as the procedural default defense has not been adjudicated, its pleading does not provide a basis to deny discovery."); *Hutton v. Mitchell*, No. 1:05-CV-2391, 2008 WL 4283318, at *2 (N.D. Ohio Sept. 16, 2008) (allegations of procedural default will not automatically bar discovery). However, "a habeas petitioner may use a Habeas Rule 6 discovery motion to obtain evidence relevant to excusing procedural default." *Payne*, 89 F. Supp. 2d at 974 (granting discovery motion in support of a presumptively defaulted claim because the motion sought to discover evidence which would allow the petitioner to obtain a factual basis to excuse default, his "actual innocence"); *see Braden*, 2007 WL 1026454, at *10 (granting the deposition of a mitigation specialist where the request was reasonably calculated to lead to evidence that could demonstrate a justification for excusing the apparent default of the petitioner's claim). Since procedural default may not automatically bar discovery in habeas cases, discovery may be allowed if it would uncover proof that could justify the apparent procedural default of Petitioner's claims.

## III.    THE CLAIMS AT ISSUE

Jordan seeks discovery about his impairment at the time of the TDOT shootings to support his ineffective assistance of counsel, *Brady*, and due process claims. (ECF No. 51-1 at PageID 10991.) The claims at issue in this discovery motion are listed in Section "I. Introduction" of Petitioner's memorandum and throughout the body of the memorandum. (*See* ECF No. 51-1 at

PageID 10991-92, 11000, 11008, 11011, 11013.)[3]  The Court arranges the claims that Petitioner

seeks to bolster through discovery by subject matter below.

**Blood and Urine Samples**

- Claim 22.3: Sixth Amendment violation: Mr. Jordan had no counsel after the preliminary hearing to preserve samples and hire experts close in time to the crime.  (*Id.*)

- Claim 22.36: IATC:[4] Counsel failed to ensure preservation and independent testing of Petitioner's blood and urine.  (*Id.*)

- Claim 22.37: IATC: Counsel failed to object to destruction of blood and urine as violating a state law and due process.  (*Id.*)

- Claim 23.1: *Brady*: The prosecution withheld evidence the TBI created when it analyzed Petitioner's blood sample. The prosecution provided defense counsel a "final" report from the TBI which falsely and misleadingly informed counsel that Petitioner's blood sample was "negative" for benzodiazepines when, in fact, it contained a high level of alprazolam.  (*Id.*)

- Claim 35: *Brady*: The prosecution failed to produce blood and urine samples that would have shown intoxication and allowed the samples to be destroyed.  (*Id.*)

**TBI Analyst Kelly Hopkins**

- Claim 22.61: IATC: Counsel failed to investigate and present evidence impeaching the credibility of TBI analyst Kelly Hopkins.  (*Id.* at PageID 10991.)

- Claim 23.2: *Brady*: The prosecution knowingly presented and allowed the false testimony of TBI analyst Kelly Hopkins as to the results of the blood tests and withheld evidence showing the falsity of that testimony.  (*Id.*)

- Claim 23.9: *Brady*: The prosecution withheld evidence to impeach TBI analyst Kelly Hopkins.  (*Id.*)

**Forensic Psychiatrist Dr. Daryl Matthews**

- Claim 22.17: IATC: Counsel failed to investigate or impeach Dr. Matthews.  (*Id.*)

---

[3] In instances when the discovery motion does not state the claims as presented in the Amended Petition, the Court will refer to the Amended Petition for clarification.

[4] "IATC" refers to ineffective assistance of trial counsel.

- Claim 22.18: IATC: Counsel failed to object to misleading and legally inaccurate comments made by Dr. Matthews.  (*Id.*)

- Claim 22.44: IATC: Trial counsel failed to object to the prosecution's questioning Drs. Wilson and Matthews about Petitioner's ability to appreciate the wrongfulness of his conduct, which conflated his sanity with the question [of] whether he possessed the required *mens rea* to be guilty of premeditated murder beyond a reasonable doubt.  (*See id.* at PageID 11013; *see* ECF No. 13 at PageID 10434.)

- Claim 22.54: IATC: Counsel failed to object to Dr. Matthews' testimony as scientifically unreliable.  (ECF No. 51-1 at PageID 10992.)

- Claim 23.5: *Brady*: The prosecution presented false testimony from Dr. Daryl Matthews, the State's forensic psychiatrist, as detailed in Claim 22.17 (a related IATC claim).  (*Id.* at PageID 10991.)

- Claim 23.10: *Brady*: The prosecution withheld evidence to impeach Dr. Matthews.  (*Id.*)

**Prosecutorial Misconduct Related to Jordan's Mental State**

- Claim 23.6: *Brady*: The prosecution withheld investigative notes from the officers' investigation into Mr. Jordan's mental state.  (*Id.* at PageID 10992).

- Claim 23.8: *Brady*: The prosecution withheld evidence of vodka in Petitioner's car and house.  (*Id.* at PageID 10991).

- Claim 23.12: *Brady*: The prosecution withheld evidence that the testimony of Barbara Surratt[5] that she heard Mr. Jordan say "I hate you" to Ms. Jordan during the incident was false.  (*Id.* at PageID 10992.)

**Tyreece Miller**

- Claim 22.46: IATC: Counsel failed to object to investigator Tyreece Miller's rebuttal testimony that Petitioner was not intoxicated and that Petitioner made additional statements to him.[6]  (*Id.* at PageID 10992, 11008.)

---

[5] Surratt is Renee Jordan's mother-in-law from a previous marriage.  (ECF No. 51-1 at PageID 10992.)  Surratt was on the telephone with Renee Jordan at the time of the TDOT shootings.  (*Id.*)

[6] This claim is incorrectly listed as Claim 22.47 in the memorandum.  (*See* ECF No. 51-1 at PageID 10992; *see* ECF No. 13 at PageID 10435.)

- Claim 36: Due process: Mr. Jordan was denied a fair trial by the State's failure to videotape his statements to investigator Tyreece Miller. (*Id.*)

## Discrimination in Grand Jury Selection

- Claim 20: Sixth Amendment/ Due Process/Equal Protection: Petitioner's right to a grand jury selected from a fair cross-section of the community was violated because of discrimination against women, African-Americans, and Hispanics in the selection of the foreperson for the grand jury that indicted Petitioner. (ECF No. 51-1 at PageID 11000; *see* ECF No. 13 at PageID 10357–59.)

- Claim 22.1: IATC: Trial counsel failed to investigate and present challenges to the indictment and move to quash the indictment on the grounds that there was invidious discrimination against women and African-Americans and Hispanics in the selection of the grand jury foreperson where women, African-Americans, and Hispanics were greatly underrepresented and/or completely excluded as forepersons, and only white males had been selected as foreperson for decades. (*Id.* at PageID 10368; ECF No. 51-1 at PageID 11000.)

## Petitioner's Appearance at Trial

- Claim 22.12: IATC: Counsel failed to object to Petitioner being medicated with drugs . . . throughout the course of trial . . .. (*See id.* at PageID 11011; ECF No. 13. at PageID 10394–95.)

- Claim 22.65: IATC: Counsel failed to object to Petitioner being bound with shackles throughout the trial and sentencing proceedings. (*Id.* at PageID 10450; *see* ECF No. 51-1 at PageID 11011.)

- Claim 24: Petitioner was improperly and involuntarily medicated with drugs and/or other medications that made him appear unemotional and unremorseful . . . , did not allow the jury to see his true emotional state and mental state, . . . and led the jury to convict Petitioner and sentence him to death . . .. (*Id.*; *see* ECF No. 13 at PageID 10469.)

- Claim 46: Sixth, Eighth and Fourteenth Amendments: Petitioner was shackled during trial and sentencing. (*See id.* at PageID 10486; ECF No. 51-1 at PageID 11011.)

## Crime Scene and Autopsy Photos

- Claim 22.55: IATC: Counsel failed to keep crime scene and autopsy photographs that were inflammatory and highly prejudicial out of evidence. (*See id.*; ECF No. 13 at PageID 10442.)

- Claim 33: Sixth, Eighth and Fourteenth Amendments: The trial court erred in allowing Matthews to testify as to statements Petitioner made to Tyreece Miller at the time of

9

Petitioner's arrest (asking how much time he would get, stating he wanted the death penalty). (*See id.* at PageID 10477–78; *see* ECF No. 51-1 at PageID 11013.)

- Claim 41: Sixth, Eighth and Fourteenth Amendments: the prosecution inflamed the jury with highly prejudicial photographs of the victims from the crime scene and autopsy, leading to the arbitrary, capricious, and unreliable imposition of the death sentence. (*See* ECF No. at PageID 10482; ECF No. 51-1 at PageID 11011.)

## Sonny Grimm, Paul Forsythe & Larry Taylor

- Claim 23.4: *Brady* claim: The prosecution presented false testimony from Sonny Grimm and/or Paul Forsythe and withheld exculpatory evidence showing the falsity of that testimony. (*See id.* at PageID 11013; *see* ECF No. 13 at PageID 10466–67.)

- Claim 22.50: IATC: Trial counsel failed to properly cross-examine Larry Taylor with regard to Johnnie Emerson's affair and the true nature of his relationship with Renee Jordan and confront Paul Forsythe with discrepant testimony from Sonny Grimm, who accompanied Mrs. Forsythe to the scene. (*Id.* at PageID 10438; *see* ECF No. 51-1 at PageID 11013).[7]

- Claim 22.51: IATC: Trial counsel failed to investigate and present evidence that Grimm or Forsythe's testimony was false, misleading, and/or untrue. (*Id.*; *see* ECF No. 13 at PageID 10438–39.)

## Other IATC Claims

- Claim 22.5: IATC: Counsel failed to hire a neuroradiologist to conduct neuroimaging tests. (ECF No. 51-1 at PageID 10992.)

- Claim 22.6: IATC: Counsel failed to conduct an independent investigation of the forensic evidence. (*Id.*)

- Claim 22.7: IATC: Counsel failed to investigate and present evidence establishing guilt-stage defenses based on brain damage, intoxication, and/or diminished capacity and failed to present mitigating circumstances based on brain damage and/or intoxication. (*Id.*).

- Claim 22.8: IATC: Counsel failed to investigate and present accurate results of toxicology exams. (*Id.*).

- Claim 22.9: IATC: Counsel failed to investigate and present evidence that Petitioner was suffering from withdrawal before and during offense. (*Id.*)

---

[7] In Petitioner's discovery memorandum, the claim is characterized incorrectly as counsel's failure to properly cross-examine Grimm and Forsythe. (*See* ECF No. 51-1 at PageID 11013.)

- Claim 22.59: IATC: Counsel failed to compile and present evidence showing the disproportionality of the death sentence under the circumstances. (ECF No. 56 at PageID 11172.)

- Claim 22.62: IATC: Counsel failed to investigate and present evidence that Petitioner was involuntarily intoxicated and secure a jury instruction on involuntary intoxication. (ECF No. 51-1 at PageID 10992.)

- Claim 22.63: IATC: Counsel agreed to waive Petitioner's right to notice of the evidence the prosecution was going to present at trial in exchange for open file discovery. (*Id.*).[8]

## IV.      THE DISCOVERY REQUESTED

Petitioner seeks discovery to establish factual and legal exceptions to procedural bars to habeas review. (ECF No. 51-1 at PageID 10989.) He asserts that the information he seeks is in the exclusive possession, custody, or control of law enforcement entities responsible for the investigation and prosecution of his case. (*Id.*) Petitioner seeks:

- documents and/or depositions related to the investigation and prosecution of Petitioner's case from the Madison County District Attorney, the Tennessee Bureau of Investigation, the Jackson Police Department, the Madison County Sheriff's Office, and the Tennessee Department of Transportation (Requests III(A-F), *see id.* at PageID 10995-99, 11004-13);

- the Madison County trial court file for information related to discrimination in the grand jury foreperson selection process (Request IV, *see id.* at PageID 11000);

- the Post-Conviction Defender's Office ("PCDO") records (Request V, *see id.* at PageID 11001–02);

- documents from the Tennessee public defender system and criminal defense bar (Request VI, *see id.* at PageID 11002);

---

[8] This claim is incorrectly listed as "Claim 23.6: IATC" in the memorandum. (*See* ECF No. 51-1 at PageID 10992; *see* ECF No. 13 at PageID 10448.)

- miscellaneous records about the proportionality of the death sentence in particular cases and statewide (Request VI(2),[9] *see id.*);

- the transmission of TBI Exhibit 101-a to a laboratory for testing to determine the level of alcohol and drugs in Petitioner's system (Request VII, *see id.* at PageID 11003); and

- multiple depositions of individuals with knowledge relevant to any of Petitioner's claims and the documents requested. (Request VIII, see *id.* at PageID 11003–13.)

## V.    ANALYSIS

Respondent argues that Petitioner fails to state sufficient facts, not merely conclusory allegations, to make a showing of good cause and that the requested material will result in the disclosure of beneficial information. (ECF No. 52 at PageID 11076, 11078, 11080.) Respondent asserts that each of Petitioner's discovery requests must be denied because he fails to plead good cause to obtain discovery and only lists his claims. (*Id.* at PageID 11080.)

Respondent contends that many of the requests for discovery on procedurally defaulted claims are "overly broad, unduly burdensome and not based on specific allegations of wrongdoing by the State of Tennessee; or are founded upon pure speculation regarding the existence of certain evidence." (*Id.* at PageID 11076.) Respondent asserts that Petitioner summarily invokes *Martinez v. Ryan*, 566 U.S. 1 (2012), to excuse the procedural default of multiple claims (specifically, Claims 22.5, 22.6, 22.8, 22.9, 22.51, 22.61 and 22.63), while conceding that the claims have not been fully briefed. (*Id.* at PageID 11082, 11092.) Respondent argues that *Martinez* does not apply to Claims 22.17, 22.18 and 22.62 because they were raised in the post-conviction petition and abandoned on appeal, and Petitioner has failed to plead cause and prejudice or a fundamental

---

[9] This request is the second request labeled as "VI." (*See* ECF No. 51-1 at PageID 11002.) The Court will reference it as Request VI(2).

miscarriage of justice to excuse the default.  (*Id.* at PageID 11082.)  Respondent argues that Claims 20, 22.12, 22.65, 24, 33, and 46 were not raised in the highest available state court and are procedurally defaulted.  (*Id.* at PageID 11087, 11089–90.)  Respondent asserts that Petitioner has failed to plead legally sufficient cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default of multiple claims.  (*Id.* at PageID 11082–83, 11088–90, 11092.)

Respondent contends that Claims 22.3 and 23 and their sub-claims are a "series of unsupported, single-sentence allegations," which have been waived and procedurally defaulted. (*Id.* at PageID 11082–83, 11085, 11091.)  Respondent asserts that *Martinez* does not apply to excuse the procedural default of these waived claims, and Petitioner has failed to plead cause and prejudice or a fundamental miscarriage of justice to overcome the default.  (*Id.* at PageID 11082– 83, 11085–86, 11091.)  Respondent asserts that Petitioner fails to show how discovery would prove the merits of his defaulted *Brady* claims, and the related discovery requests are "really a fishing expedition based on a defaulted conclusory allegation."  (*Id.* at PageID 11086.)

Respondent argues that *Pinholster* bars discovery for claims adjudicated on the merits (specifically Claims 22.1, 22.36, 22.37, 22.44, 22.47, 22.50, 22.54, 22.55, 35,[10] 36, and 41) because "it would be futile and a waste of resources to allow Petitioner to seek out new evidence" on these claims.  (*Id.* at PageID 11077, 11079, 11084, 11087–92.)

Respondent asserts that the Tennessee Post-Conviction Procedure Act provides an opportunity for discovery before a post-conviction evidentiary hearing, and Petitioner's failure to

---

[10] Respondent contends that Claim 35, to the extent Petitioner attempts to recharacterize it as a *Brady* claim, is procedurally defaulted.  (ECF No. 52 at PageID 11087.)

use available state discovery procedures is relevant to evaluating a discovery request.  (*Id.* at PageID 11078–79.)

Respondent contends that the "vast majority" of Petitioner's discovery requests are "overly broad, based on mere speculation, and do not support his asserted claims." (*Id.* at PageID 11092.) Respondent argues, based on Fed. R. Civ. P. 26(b)(2)(C)(i) and (ii), that discovery should be limited to the extent it is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive and if the burden or expense outweighs the likely benefit. (*Id.* at PageID 11092.) Respondent argues that Petitioner must "at least attempt to identify what he expects to uncover through his discovery requests" and that he has not met that burden. (*Id.* at PageID 11093.)

Petitioner argues that he is entitled to discovery on the merits of his unexhausted claims and to establish cause and prejudice to excuse the failure of post-conviction counsel to present claims in state court. (ECF No. 56 at PageID 11139.) He contends that, for every claim not presented in state court, he is entitled to federal habeas review under *Martinez*, 566 U.S. at 14. (*Id.*) Petitioner contends that the PCDO was roiled by turmoil and chaos and that, during the eight-month period leading up to the initial setting for Petitioner's post-conviction evidentiary hearing, five of the nine attorneys in the office, including the two attorneys assigned to Petitioner's case, resigned. (*Id.* at PageID 11140-41.) Because a continuance was granted to the State, new counsel had to be reassigned, and Petitioner was without any counsel for a month. (*Id.* at PageID 11141-42.) Petitioner contends that Sarah King, his newly assigned post-conviction counsel, had no capital defense experience, and Stacie Lieberman, his other counsel, only stayed at the PCDO for four months. (*Id.* at PageID 11142.) Further, Petitioner complains that Chris Pennell, his investigator, was terminated abruptly and not replaced until six weeks before the evidentiary hearing. (*Id.*)

14

Petitioner asserts that Kelly Gleason, the supervising attorney, stepped in when Lieberman left three months before the evidentiary hearing. (*Id.* at PageID 11143.) Gleason and King felt that the case had not been prepared as it should have been, and the investigation was not complete. (*Id.*) A motion to continue the evidentiary hearing and two supplemental amended petitions, asserting counsel's belief that a different direction was needed for the investigation and presentation of Petitioner's claims, were filed in the weeks before the evidentiary hearing. (*Id.* at PageID 11143-44.) Gleason indicated that she had not been able to perform much work because of other case obligations and that her office was in chaos, "devastating our ability to prepare the case." (*Id.* at PageID 11144.) Despite the unavailability of Petitioner's expert, who was to offer testimony about the ineffective assistance of trial counsel, the motion for a continuance was denied. (*Id.* at PageID 11145.) A renewed motion for a continuance was also denied. (*Id.* at PageID 11147.)

Petitioner asserts that Gleason announced before the evidentiary hearing that she was not ready to proceed, had not read the trial transcripts, the trial attorney file, the mitigation specialist's file, or interviews. (*Id.*) Petitioner argues that any failure to develop facts or claims during the state court proceedings was based on the failure of the state court to provide him with post-conviction counsel who were prepared to present his claims and inadequate time and resources for expert assistance. (*Id.* at PageID 11148.)

Petitioner requests, at a minimum, the personnel files of staff members who were fired or forced to resign and summarily escorted off the property during the time that Petitioner was represented by the post-conviction defender's office. (*Id.*) He contends that the PCDO has indicated problems with adequate funds to obtain expert assistance, and Petitioner seeks discovery on those impediments to presenting his claims in the state court. (*Id.*) Petitioner asserts that he

15

can show prejudice for the failure to present his unexhausted claims in state court. (*Id.* at PageID 11149.)

Petitioner asserts that he is entitled to discovery on some of his exhausted claims. (*Id.* at PageID 11151.) He contends that the Tennessee courts' rulings were contrary to, or an unreasonable application of, clearly established law, and/or were based on an unreasonable determination of fact. (*Id.*) Specifically, he asserts that he is entitled to relief as to Claim 22.54, which alleges IATC for failure to oppose the admissibility of the State's mental health expert Dr. Matthews and to cross-examine him competently. (*Id.* at PageID 11151-52.) Petitioner argues that, after the predicates of § 2254(d) are satisfied, *Pinholster* does not apply. (*Id.* at PageID 11152-54.)

Petitioner claims that the extreme lack of preparation for the post-conviction hearing is evident in virtually every one of Petitioner's claims, resulting in the summary rejection of claims presented in the post-conviction process (*see* Claims 22.17, 22.18, 22.44, 22.38, 22.42, 22.44, 22.47, and 22.48). (*Id.* at PageID 11154-56.) Petitioner contends that his post-conviction counsel failed to ask trial counsel "a single question about numerous important IATC claims, much less present other evidence to substantiate the claim." (*Id.* at PageID 11156.) Petitioner asserts that his post-conviction counsel were woefully unprepared, that the state post-conviction courts turned a deaf ear to his requests for additional time in light of the chaos at the PCDO, and the state failed to provide an adequate forum for the resolution of his constitutional claims. (*Id.* at PageID 11156–57.) Petitioner argues that the failure to develop the factual basis of his claims in the state courts cannot be laid at his feet, and discovery should be granted on his exhausted claims. (*Id.* at PageID 11157.)

16

As stated *supra*, the Court will not bar discovery based on *Pinholster*.  Nor will the Court bar discovery on claims based on assertions of procedural default.  To the extent that Petitioner seeks discovery, he must demonstrate good cause.  Further, where the claim is unexhausted, Petitioner must show that the discovery sought can be used to overcome procedural default.  The Court now addresses Petitioner's individual discovery requests.

### A.    MADISON COUNTY DISTRICT ATTORNEY

Petitioner seeks documents from the Madison County District Attorney ("DA") and the depositions of attorneys, staff members, and contractors who have knowledge about the investigation and prosecution of Petitioner's case including, but not limited to, former District Attorney General James Woodall and District Attorney General Jody Pickens.  (ECF No. 51-1 at PageID 10995-96, 11004–06; *see* ECF No. 56 at PageID 1156.)  In Request III(A), Petitioner seeks a subpoena *duces tecum* to obtain the following information:

1.    Prosecution's Complete File, and

2.    To the extent not included in the file, Petitioner seeks

  a.    All letters/written communications with witnesses, including witnesses who did not testify at trial;

  b.    Victim advocate file;

  c.    All correspondence between the DA and Tennessee Department of Transportation employees;

  d.    All correspondence between TBI analyst Hopkins and prosecutors;

  e.    All correspondence between the DA and the State's trial experts, including experts who did not testify;

  f.    All documents or evidence describing Dr. Matthews' testimony;

  g.    Files of all experts [the] DA consulted with, including, but not limited to, Dr. Matthews;

17

h.   Documents, memos, e-mails, or other communication (oral or written), pertaining to the destruction of any evidence related to the David Jordan homicide investigation;

i.   All documentation related to the testing of David Jordan's blood and urine; and

j.   All documentation that would support David Jordan's assertion that he was intoxicated at the time of the crime.

(ECF No. 51-1 at PageID 10995-96). There are three aspects of the discovery requests related to the DA that are in contention: (1) the production of the prosecution's complete file and the failure of the DA to provide a business records affidavit for the documents produced (*see* Request III(A)(1)); (2) the new document requests (*see* Request III(A)(2)); and (3) the depositions (*see* Request VIII(A)).

### 1.   The Prosecution's Complete File (Request III(A)(1))

Petitioner acknowledges that the DA has produced documents responsive to the subpoena for the prosecution's case file. (ECF No. 51-1 at PageID 10995.) Still, Petitioner requests the "Prosecution's Complete File." (*Id.*) Petitioner argues that Pickens declined the request to have the custodian of records sign an affidavit to certify that a member of his staff conducted a diligent search for documents responsive to the subpoena and produced true copies of all responsive documents kept in the course of regularly conducted business. (*Id.* at PageID 10995, 11004.)

Respondent argues that Petitioner provides no basis for the assertion that the document production is incomplete. (ECF No. 52 at PageID 11095.) Respondent objects to the request because the DA has fully complied with the subpoena, and allegations that the file is incomplete are purely speculative. (*Id.* at PageID 11095–96.) Respondent asserts that the Petitioner's business records affidavit was not mentioned in the Joint Statement or addressed before the parties agreed

18

to the subpoena.  (*Id.* at PageID 11096.)  Respondent contends that Pickens chose not to sign the affidavit because he has not been the custodian of records since the creation of the file.  (*Id.*)  Further, Respondent asserts that Pickens invites Petitioner's counsel to review the case file in person.  (*Id.*)

Petitioner asserts that Pickens was one of two district attorneys, the other being Woodall, who prosecuted Petitioner in 2006.  (ECF No. 56 at PageID 11156.)  Petitioner contends that Pickens' unwillingness to have anyone in his office vouch for the production "is not surprising" because the office has apparently not kept the file in an organized fashion given that, on April 23, 2020, Pickens notified Petitioner's counsel that an additional three boxes of case materials were discovered.  (*Id.* at PageID 1116768; *see* ECF No. 53-2.)  Petitioner's counsel asserts that, without an affidavit or business records certification, he cannot authenticate the documents in the file. (ECF No. 56 at Page ID 11169.)

Petitioner has not provided the Court with a copy of the subpoena.  Petitioner did not request a certification for the records at the time the subpoena was served.  Although Petitioner requests a complete file, Petitioner has not identified specific documents it believes to be missing from the file or made other assertions that demonstrate the file is incomplete.  The DA has timely supplemented documents that were not previously produced, demonstrating a willingness to comply with the subpoena and produce the complete case file.  Further, Respondent asserts that Petitioner has been offered the opportunity to review the file.

19

Petitioner has not demonstrated good cause for a second subpoena for production of the DA's file.[11]   Request III(A)(1) for "the Prosecution's complete file" is DENIED.

### 2.        The New Documents Requests (Request III(A)(2))

Petitioner seeks specific documents to the extent that they were included in the DA's production.  (ECF No. 51-1 at PageID 10995.)  Respondent argues that Petitioner does not allege specific claims related to the requested documents and does not allege a factual dispute that the documents will resolve.  (ECF No. 52 at PageID 11095–96.)  Further, Respondent objects to the request to the extent it would require production of privileged information or attorney work product.  (*Id.* at PageID 11095.)

In reply, Petitioner provides a "non-exhaustive list" of claims that he contends relate to the discovery requests from law enforcement, including the DA.  (*See* ECF No. 56 at PageID 11159, 11163–66.)  However, no argument has been made as to the specific document requests and how they relate to the factual development and or resolution of these claims.  Petitioner has not demonstrated good cause for the additional documents requested from the DA.  Petitioner's requests for additional documents to the extent they were not included in the DA's case file (*see* Request III(A)(2)(a-j)) are DENIED.

### 3.        Depositions (Request VIII(A))

Petitioner seeks to depose the following persons associated with the DA's office:

1. The prosecutors who investigated and conducted Petitioner's trial, including but not limited to James Woodall and Jody Pickens;

2. Other staff members who investigated and assisted with Petitioner's trial;

---

[11] Petitioner may seek to inspect the file, make good faith attempts to resolve the issue, and/or file a motion to compel and give the DA the opportunity to respond.

3. Staff who interacted with victims and witnesses, including but not limited to the victim witness coordinator(s); and

4. Staff members who participated in the production of documents in response to Petitioner's subpoena.

(ECF No. 51-1 at PageID 11004.)  Because of the prosecutor's refusal to sign a business records affidavit, Petitioner requests leave to depose Pickens and members of his staff with knowledge about the production of documents in response to the subpoena so that the documents may be authenticated for use in the habeas proceedings.  (*Id.* at PageID 11005.)  Based on *McCleskey v. Zant*, 499 U.S. 467, 497-98 (1991), Petitioner argues that due diligence dictates that he request court-ordered discovery from the prosecutor to establish cause and prejudice for his *Brady* and prosecutorial misconduct claims.  (*Id.* at PageID 11005–06; *see* ECF No. 56 at PageID 11169.)

Petitioner's counsel asserts that she has shown good cause to depose Pickens or an appropriate person in the DA's office with knowledge of how case files are maintained, how the search for materials responsive to the subpoena was handled, whether all responsive materials were provided, and whether true and authentic copies were provided.  (*Id.* at PageID 11169.)

Respondent objects to Petitioner's requests for the depositions of numerous unnamed individuals where the request is overly broad, unduly burdensome, and wholly lacking in specificity.  (ECF No. 52 at PageID 11103.)  Respondent argues that Petitioner has failed to establish good cause for the depositions of Woodall and Pickens and to allege how the depositions will provide evidence that support Petitioner's claims for relief.  (*Id.*)  Respondent contends that the existence of such evidence is speculative and insufficient to warrant discovery.  (*Id.*)

With regard to the deposition of Pickens and his staff involved in the production of the case file, Respondent argues that the request should be denied for the reasons previously set forth about the production of the complete case file and other requested documents.  (*Id.*)  Respondent argues

21

that Petitioner's reliance on *McCleskey* is misplaced because, in *McCleskey*, the petitioner was foreclosed from raising a new claim, which he asserts he could not have raised previously because of the unavailability of a document, where the petitioner had "at least constructive knowledge all along of the facts he now claims to have learned only from the 21-page document." (*Id*. at PageID 11103–04.)

Further, Respondent contends that the deposition of the records custodian is not needed to ensure the completeness and authenticity of the production. (*Id.* at PageID 11104.) Respondent argues that Petitioner has not established good cause where there is no reason to presume that the document production is incomplete or that the items are not authentic. (*Id.*)

Petitioner has not indicated any document from the production that requires authentication for these proceedings. As stated *supra*, the issue of whether the DA's file is complete may require additional communication between Petitioner's counsel and the DA's office and or litigation through a motion to compel. Petitioner has not, at this time, established good cause for the deposition of a records custodian or DA's office staff member involved in the production.

Petitioner has not shown how the depositions of the current and former DAs and unidentified DA's office staff will provide information materially related to his claims or resolve the issues presented in his Amended Petition. Petitioner does not identify the information he seeks and has not demonstrated good cause for the requested depositions. The requests for depositions of individuals from the DA's office (Request VIII(A)(1-4)) are DENIED without prejudice.

**B.    THE TENNESSEE BUREAU OF INVESTIGATION ("TBI")**

Petitioner seeks documents from the TBI and depositions of employees and contractors.

**1.    Documents (Request III(B))**

Petitioner seeks a subpoena *duces tecum* for the following information:

1.      The TBI investigative file including materials in the main office, in local offices, the laboratory, or wherever maintained;

2.      To the extent not included in the above file, Petitioner seeks:

      a.      The TBI file index;

      b.      Records related to all investigations involving David Jordan;

      c.      Records related to the testing of David Jordan's blood and urine;

      d.      Laboratory bench notes, property logs, and testing results, whether or not in the TBI file;

      e.      All documentation related to the testing of David Jordan's blood and urine;

      f.      Documents, memos, e-mails, or other communication (oral or written), pertaining to the destruction of any evidence related to the David Jordan homicide investigation;

      g.      All property room logs and crime lab reports; and

      h.      All documentation that would support David Jordan's assertion that he was intoxicated at the time of the crime.

(ECF No. 51-1 at PageID 10996–97.)[12]

### a.  The Investigative/ Forensic File (Requests III(B)(1) & (2)(c-h))

Petitioner seeks a subpoena for the "TBI investigative file including materials in the main office, in local offices, the laboratory, or wherever maintained." (ECF No. 51-1 at PageID 10996.) The Court has granted discovery of the TBI "case file in Jordan's case." (ECF No. 46 at PageID 10977.) Petitioner has served a subpoena and received documents and a business records affidavit in response. (ECF No. 51-1 at PageID 10996.) Respondent argues that the TBI complied fully

---

[12] There is no clear distinction between Requests III(B)(c) & (e).

with the subpoena.  (ECF No. 52 at PageID 11097.)  Respondent contends that the only documents excluded from production, as agreed by the parties, were the medical transport records of the victims from the crime scene to the emergency department.  (*Id*.)  Respondent argues that any allegation that the case file is incomplete is purely speculative.  (*Id*.)

Respondent asserts that crime lab reports and records about the blood and urine testing (*see* Requests III(B)(2)(c-h)), to the extent they exist and were not included in the case file, would be in the TBI forensic file, which is kept separate from the case file in a separate division of TBI. (ECF No. 52 at PageID 11097–98.)  Respondent asserts that Petitioner has not alleged any specific claims in relation to the request for the forensic file or a factual dispute that these documents will resolve.  (*Id.*)

In reply, Petitioner clarifies that he is requesting the entire contents of the TBI forensic file, which is anticipated to assist in fully developing the non-exhaustive list of claims in the reply, including IATC and *Brady* claims related to the blood, hair, and urine samples (*see* Claims 22.6, 22.8, 22.36, 22.37, 22.61, 23.1, 23.2, 23.9).  (*See* ECF No. 56 at PageID 11160, 11163–65.)[13]

Regarding documents in the TBI forensic file, Petitioner has *listed* multiple claims, but he does not make a specific argument or assert a factual dispute that would be resolved by the TBI forensic file.  Through a series of claims, Petitioner seeks to show his mental state at the time of the offense and rebut the conclusions and assertions of TBI analysts.  Many of these claims were not presented and/or arguably not fully developed in the state courts.  The Court finds good cause for a subpoena for the production of the TBI forensic file, including those documents listed in

---

[13] Petitioner has also *listed* several claims about the handling, testing, and destruction of blood and urine examples as related to his request for the depositions of TBI employers and contractors.  (*See* ECF No. 51-1 at PageID 11007.)

Requests III(B)(1) & (2)(c-h), to the extent that these documents have not already been produced. Requests III(B)(1) & (2)(c-h) are GRANTED.

### b.  File Index (Request III(B)(2)(a))

Petitioner requests the TBI file index.  (ECF No. 51-1 at PageID 10997.)  Respondent asserts that a table of contents was provided in the file, and no such "file index" exists.  (ECF No. 52 at PageID 11097.)  In Petitioner's reply, he abandons the request for the file index.  The Court finds that the production of the table of contents satisfies the request.  Request III(B)(2)(a) is DENIED.

### c.  Records of All Investigations (Request III(B)(2)(b))

Petitioner requests records related to "all investigations involving David Jordan." (ECF No. 51-1 at PageID 10097.)  Respondent contends that the Court's grant of the TBI case file on "Jordan's case" with a specific reference to the shooting incident that occurred on January 11, 2005, at the TDOT facility is sufficient.  (ECF No. 52 at PageID 11097.)  Respondent asserts that the records related to "all investigations" involving Petitioner is outside the scope of discovery and should be denied.  (*Id.*)

The Court agrees that the request for all TBI records related to "all investigations" of Petitioner is overly broad and requires production of documents not materially related to Petitioner's habeas claims.  Petitioner has not demonstrated good cause for TBI records of all investigations that involve him.  Request III(B)(2)(b) is DENIED.

### 2.  Depositions (Request VIII(B))

Petitioner seeks to depose TBI employees or contractors who participated in the investigation of the case, including but not limited to individuals who: (a) participated in or have information about the investigation and prosecution of the case, (b) have knowledge of Petitioner's

state of mind at the time of the murders; (c) were involved in the collection of Petitioner's blood or urine; (d) have knowledge of the manner in which those samples were stored and tested; (e) participated in or have knowledge of the decision to destroy Petitioner's blood and urine samples; (f) have knowledge of the protocols and standards of practice for taking, maintain, preserving, testing, and destroying such samples at the time that Petitioner's samples were taken and as they have evolved over time; and (g) have knowledge of the creation and maintenance of the blood sample identified as TBI Exhibit 101-a referenced in the TBI Serology report issued April 27, 2005.  (ECF No. 51-1 at PageID 11006–07.)  Petitioner requests the deposition of TBI analyst Kelly Hopkins and other individuals with the knowledge described above because Petitioner contends that their depositions will lead to evidence relevant to his claims about the handling, testing, and destruction of his blood and urine samples, specifically Claims 22.3, 22.36, 22.37, 35, 23.1, 23.2 and 23.9.  (*Id.* at PageID 11007-11008.)

Respondent argues that the requests for depositions of numerous unnamed individuals is overly broad and unduly burdensome.  (ECF No. 52 at PageID 11104.)  He objects to the deposition of Hopkins because she testified under oath at trial and that testimony is part of the record.  (*Id.*)  Respondent argues that the request is duplicative and the expense far outweighs the likely benefit.  (*Id.*)

Hopkins testified at trial on September 22, 2006, as an expert in toxicology for the defense.  (*See* ECF No. 8-30 at PageID 3176–92.)  *See State v. Jordan*, No. W2007-01272-CCA-R3-DD, 2009 WL 1607902, at *13 (Tenn. Crim. App. June 9, 2009).  She also testified on Petitioner's behalf at the post-conviction hearing about the calibration of TBI crime lab equipment when she tested Petitioner's blood.  (*See* ECF No. 56 at PageID 11050–61; *see* ECF No. 8-87 at PageID 8373–8405.)

26

Petitioner's counsel twice chose to present Hopkins as a witness to testify about the TBI's drug screen. Hopkins provided Petitioner's post-conviction counsel with a litigation packet including information about her testing of the Petitioner's blood and urine samples and met with post-conviction counsel to review her testimony. *Jordan*, 2016 WL 6078573, at *31. Given the availability of Hopkins' testimony to the defense, Petitioner has not demonstrated how further examination is materially related to or would resolve a factual dispute that supports his habeas claim. *See Sanborn v. Parker*, 289 F. Supp. 2d 818, 823 (W.D. Ky. 2003) ("An attempt simply to repeat the prior inquiry, without some particularized showing, is not adequate. Such is not a proper use of Rule 6's discovery tools.") Petitioner has not demonstrated good cause for his counsel's third examination of Hopkins when defense counsel has previously consulted with the witness and twice presented the witness in the defense's case. The request for the deposition of Kelly Hopkins is DENIED.

Petitioner asks for the depositions of other unnamed TBI employees and contractors who were either involved in the investigation and prosecution or with the analysis or destruction of blood and urine samples taken from the Petitioner. The Court notes that several TBI employees, other than Hopkins, testified at trial or in the post-conviction proceedings including TBI Agents Scott Lott, Cathy Ferguson, Shelly Betts, and John Harrison. *See State v. Jordan*, 2009 WL 1607902, at *10, 12. As Petitioner has had the opportunity for direct and/or cross-examination of these TBI employees, Petitioner has not demonstrated good cause for their depositions.

The Court will not give a blanket grant of the depositions of unspecified persons who worked with or contracted with the TBI.[14]  To the extent Petitioner seeks the depositions of unnamed individuals, he has not shown how the depositions are materially related to his claims and not demonstrated good cause.

Petitioner's requests for the depositions of TBI employees and contractors (Request VIII(B)) are DENIED.

### 3.    TBI EXHIBIT 101-A (Request VII)

Petitioner seeks an order directing the custodian of TBI Exhibit 101-a, a swatch with Petitioner's dried blood referenced in the TBI Serology Report issued on April 27, 2005, to transfer the swatch to a laboratory designated by Petitioner for further testing to the determine the level of alcohol and drugs in his system at the time of the murders.  (ECF No. 51-1 at PageID 11003, 11007.)  Respondent argues that Petitioner has not identified a specific claim in relation to this request and failed to meet his burden of showing materiality and that the discovery will resolve a factual dispute.  (ECF No. 52 at PageID 11102.)

In reply, Petitioner asserts that the level of drugs in his system is central to many of his claims because his state of mind at the time of the murders is a central issue in the case.  (ECF No. 56 at PageID 11160.)  Petitioner seeks independent expert testing of this evidence because Hopkins testified, in the post-conviction proceedings, that the calibration of the testing equipment was inaccurate and resulted in a false conclusion that Petitioner's blood was negative for alprazolam. (*Id.* at PageID 1116062.)  He argued that the TBI's testing of the blood sample was unreliable,

---

[14] Petitioner has received TBI records which should allow him to identify individuals who may have information related to his claims.  Additionally, pursuant to this Order, Petitioner will receive the TBI forensic file which will provide additional information.

inaccurate, and misleading based on the testimony of neuropharmacology expert Jonathan Lipman. (*Id.* at PageID 11161–62.)   *See Jordan*, at *40.   Petitioner identifies ineffective assistance of counsel and *Brady* claims related to this request including counsel's failure to preserve the samples, the prosecution's withholding of evidence, Hopkins' purported false testimony, and the destruction of the samples (*see* Claims 22.3, 23.1, 23.2, 23.9, and 35).   (*Id.* at PageID 11162–63.)

To the extent that testing of Exhibit 101-a could provide a scientifically reliable result about Petitioner's ingestion of alprazolam and his mental state at the time of the murders, this information could be relevant to a determination of prejudice for an ineffective assistance of counsel claim or support an argument that material exculpatory evidence was withheld under *Brady*.   The Court finds good cause to produce Exhibit 101-a to a laboratory of Petitioner's choosing for independent expert testing to determine the level of alcohol and drugs in his system at the time of the offense. Request VII is GRANTED.

## C.   JACKSON POLICE DEPARTMENT ("JPD")

Petitioner seeks documents from the JPD and the depositions of employees and contractors involved with the investigation or who observed Petitioner's demeanor at the time of the offense.

### 1.   Documents (Request III(C))

Petitioner seeks a subpoena *duces tecum* for the following information:

1.   JPD investigative file

2.   To the extent not included in the above file, Petitioner seeks:

  a.   Documents, memos, e-mails, or other communication (oral or written), pertaining to the destruction of any evidence related to the David Jordan homicide investigation;

  b.   Documentation related to policies and guidelines regarding taping, logging, and storing video statements.

    c.   All property room logs and crime lab reports;

    d.   All documentation related to the testing of David Jordan's blood and urine; and

    e.   All documentation that would support David Jordan's assertion that he was intoxicated at the time of the crime.

(ECF No. 51-1 at PageID 10997.)

The Court has granted discovery of the "case file from the Jackson Police Department in Jordan's case." (*See* ECF No. 46 at PageID 10978.) Respondent argues that the JPD has fully complied with the subpoena and signed a business records affidavit. (ECF No. 52 at PageID 11098.) Respondent contends that any allegation that the file is incomplete is purely speculative, and Petitioner's request for additional documents from the JPD should be denied. (*Id.*) In reply, Petitioner provides a "non-exhaustive" list of claims to show that the law enforcement records and depositions are relevant. (ECF No. 56 at PageID 11163–65.)

The JPD has produced the case file with a supporting business records affidavit. Petitioner does not argue that the file is incomplete. Petitioner has not sought to compel production of any document believed to be in the file that has not been produced to date. Petitioner has not demonstrated good cause to show that a second subpoena is necessary to obtain the JPD's investigative file.

As to the specific documents that Petitioner requests that *may* not be included in the file, Petitioner makes no specific argument to demonstrate how these documents are materially related to his claims or the factual development of his case. Petitioner has not demonstrated good cause for additional documents from the JPD.

Requests III(C)(1 & 2) for documents from the JPD are DENIED.

## 2.     Depositions (Request VIII(C))

Petitioner seeks to depose JPD officers, staff members, or contractors involved with the investigation of this offense, including those who interacted with Petitioner and observed his demeanor and state of mind.  (ECF No. 51-1 at PageID 11008.)  Petitioner seeks the deposition of the following individuals: (1) Rodney Anderson; (2) Randall Ervin; (3) Tikal Greer; (4) Ted Maxwell; (5) Tommy McLean; (6) Tyreece Miller; (7) Amy Oxley; (8) Jeff Shepherd; (9) Berkeley Sain; (10) Kenneth Stone; (11) Mike Thomas; and (12) Steve Wiley.  (*Id.* at PageID 11008-11009.) Petitioner asserts that counsel for the JPD has indicated that no current employee is willing to speak with Petitioner's legal team.  (*Id.* at PageID 11008 n.2.)

Respondent argues that the requests for depositions of numerous unnamed individuals is overly broad and unduly burdensome.  (ECF No. 52 at PageID 11105.)  Because JPD officers Anderson, Greer, and Maxwell; Investigators Miller and Shepherd; and Sergeant Mike Thomas testified under oath at trial, Respondent objects to their depositions.  (*Id.*)  Respondent argues that the request is duplicative, and the expense far outweighs the likely benefit.  (*Id.*)  For the remaining named requests, Respondent asserts that Petitioner has failed to allege what evidence they will provide and how that evidence will lead to relief on his claims.  (*Id.*)  In reply, Petitioner provides a "non-exhaustive" list of claims to which the law enforcement records and depositions are relevant.  (ECF No. 56 at PageID 11163–65.)

Defense counsel had the opportunity to question Anderson, Greer, Maxwell, Miller, Shepherd, and Thomas at trial.  *See Jordan*, 2016 WL 6078573, at *6-7, 10-14.  Counsel's ability to question a witness at the original trial generally mitigates the need for a discovery deposition. *See Payne*, 89 F. Supp. 2d at 974; *see also Sanborn*, 289 F. Supp. 2d at 823.  Petitioner has not shown what further testimony is needed, given the testimony on the record.  Petitioner has not

demonstrated good cause for the depositions of JPD officers Anderson, Greer, Maxwell, Miller, Shepherd, and Thomas (Requests VIII(C)(1, 3, 4, 6, 8, & 11)).

Petitioner asserts that Oxley processed his vehicle for evidence and Wiley was at the JPD garage when the vehicle was searched.[15]  (ECF No. 51-1 at PageID 11008-11009.)  However, Petitioner does not demonstrate that Oxley and Wiley encountered Petitioner on the day of the offense or would have information about his demeanor and state of mind at the time of the offense. Petitioner does not show how these depositions would provide information materially related to his habeas claims.  Petitioner has not demonstrated good cause for Oxley and Wiley's depositions (Request VIII(C)(7 & 12)).

Petitioner asserts that Ervin and Stone were dispatched to TDOT at the time of the offense and that they have refused to speak with Petitioner's counsel.  (ECF No. 51-1 at PageID 11008–09.)  Petitioner makes no allegations about the contact that Ervin or Stone may have had with Petitioner on the day of the offense or how such information would further develop his claims. Without more, the depositions would amount to a fishing expedition.   Petitioner has not demonstrated good cause for the depositions of Ervin and Stone (Requests VIII(C)(2 & 10)).

Petitioner asserts, based on a picture in the Jackson Sun newspaper, that McLean escorted Petitioner into the courtroom.  (*Id.* at PageID 11008.)  Petitioner has not provided the Court with a copy of the picture on which he bases this request.  Petitioner does not argue how McLean's testimony is related to specific habeas claims or would resolve a factual issue before the Court.

---

[15] Petitioner references the vehicle in question as a truck in one instance and a car in another. (*See* ECF No. 51-1 at PageID 11008–09.)

32

Petitioner has not expressed what information he seeks from McLean and has not demonstrated good cause for McLean's deposition (Request VIII(C)(5)).[16]

According to Petitioner, Sain and Thomas took Petitioner to the ground as he got out of his vehicle. (*Id.* at PageID 11009.)  The Court denied the request for Thomas's deposition because he has testified at trial, *see supra*.  Petitioner has not alleged that Sain's encounter with Petitioner differs in any marked way from how it was described in Thomas's testimony.  Petitioner has not shown that Sain's testimony would resolve a factual dispute relevant to Petitioner's habeas claims.  Petitioner has not demonstrated good cause for Sain's deposition (Request VIII(C)(9)).

To the extent that there are unnamed JPD officers, staff members, or contractors involved with the investigation of the TDOT shootings that Petitioner seeks to depose, the Court will not give a blanket grant of the depositions of unspecified persons, especially given that Petitioner has received JPD records which could assist him in identifying individuals with information materially related to his claims.  To the extent Petitioner seeks the depositions of other unnamed individuals, he has not demonstrated good cause.

The depositions of JPD officers, staff members, or contractors (Request VIII(C)) are DENIED.

---

[16] The Court acknowledges that, in connection with Petitioner's requests for discovery from the Madison County Criminal Court, Petitioner has asserted that he seeks to depose individuals who witnessed the trial proceedings including jail and court personnel who accompanied Petitioner to obtain evidence to support claims that he was shackled and involuntarily medicated during the trial (*see* Claims 46, 22.65, 24, and 22.12).  (ECF No. 51-1 at PageID 11011–12.)  Additionally, in Petitioner's non-exhaustive list of claims related to depositions of law enforcement personnel, Petitioner ties the depositions to IATC claims for failure to investigate and present evidence that Petitioner was involuntarily intoxicated (*see* Claim 22.62).  (ECF No. 56 at PageID 11165.)  Yet, Petitioner fails to tie this specific request to a habeas claim and argue good cause.

D.      **THE MADISON COUNTY SHERIFF'S OFFICE ("MCSO")**

Petitioner seeks documents from the MCSO and depositions of employees and contractors

involved with the investigation or who observed Petitioner's demeanor at the time of the offense.

(ECF No. 51-1 at PageID 10998, 11009.)

1.      **Documents (Request III(D))**

Petitioner seeks a subpoena *duces tecum* for the following information:

1.      The MCSO investigative file; and

2.      To the extent not included in the above file, Petitioner seeks:

  a.   Documents, memos, e-mails, or other communication (oral or written),
       pertaining to the destruction of any evidence related to the David Jordan
       homicide investigation;

  b.   Documentation related to policies and guidelines regarding taping, logging, and
       storing video statements;

  c.   All property room logs and crime lab reports;

  d.   All documentation related to the testing of David Jordan's blood and urine;

  e.   All documentation that would support David Jordan's assertion that he was
       intoxicated at the time of the crime; and

  f.   Jail and prison records regarding David Jordan, including all treatment for
       physical or mental health and sign-in and sign-out logs for any person who had
       contact with David Jordan.

(ECF No. 51-1 at PageID 10998.)

The Court previously granted Petitioner the "case file from the Madison County Sheriff's

Department in Jordan's case." (*See* ECF No. 46 at PageID 10978.) Petitioner acknowledges that

MCSO has produced documents responsive to the subpoena and a signed business records affidavit

for the production. (ECF No. 51-1 at PageID 10998; *see* ECF No. 56 at PageID 11166.)

Respondent argues that MCSO has fully complied with the subpoena. (ECF No. 52 at PageID

34

11098.)  Respondent asserts that any allegation that the MCSO production is incomplete is purely speculative and that Petitioner should not be granted additional documents from MCSO.  (ECF No. 52 at PageID 11099.)  In reply, Petitioner provides a "non-exhaustive" list of claims to which he contends the law enforcement records and depositions are relevant.  (ECF No. 56 at PageID 11163–65.)

Petitioner does not argue that the file is incomplete.  Petitioner has not demonstrated good cause for a second subpoena to obtain the MCSO's investigative file.

As to the specific documents that Petitioner requests that *may* not be included in the file, Petitioner makes no argument to demonstrate how these documents are materially related to his claims or the factual development of his case.  Petitioner has not demonstrated good cause for additional documents from the MCSO.  The requests for documents from the MCSO (Requests III(D)(1 & 2)) are DENIED.

## 2. Depositions (Request VIII(D))

Petitioner seeks the depositions of MCSO employees or contractors involved with the investigation of Petitioner's case, including, but not limited to "jail personnel, such as booking officer(s), medical staff, and guards," and those who interacted with Petitioner and observed his demeanor and state of mind.  (ECF No. 51-1 at PageID 11009.)  Petitioner contends that the names of individuals on many documents in the MCSO records are illegible.  (*Id.*)  Petitioner asserts that he will seek to identify the individual(s) who signed the fingerprint card when Petitioner was arrested and others whose names were not discernible from the documents.  (*Id.*)  Petitioner seeks

the deposition of the following specific individuals: (1) Martha Campbell; (2) Brandon Darse (or Darsey); (3) Chad Lowery; (4) Felisa Miller;[17] and (5) Nita Murphy.  (*Id.* at PageID 11009-10.)

Respondent argues that the requests for depositions of numerous unnamed individuals is overly broad and unduly burdensome.  (ECF No. 52 at PageID 11105.)  He objects to the depositions of MCSO Sergeant Chad Lowery and Sergeant Marneina Murphy[18] because they testified under oath at trial, and their testimony is part of the record.  (*Id.* at PageID 11105–06.)  Further, Respondent argues that the deposition requests are cumulative, and the expense far outweighs the likely benefit.  *(Id.* at PageID 11106.)  For the remaining named requests, Respondent asserts that Petitioner has failed to allege what evidence the depositions will provide and how that evidence will lead to relief on his claims.  (*Id.*)  In reply, Petitioner provides a "non-exhaustive" list of claims to which he contends the law enforcement records and depositions are relevant.  (ECF No. 56 at PageID 11163–65.)

Petitioner asserts that Officer Campbell observed him around the time of the offense and is a records technician with knowledge about MCSO's records and record-keeping procedures.  (ECF No. 51-1 at PageID 11009.)  Petitioner does not allege any information about the contact that Campbell may have had with Petitioner on the day of the offense or how such information would further develop his claims.  Petitioner has made no assertions that the MCSO records were incomplete or expressed why the deposition of a records technician is necessary.  Petitioner has not demonstrated good cause for Campbell's deposition (Request VIII(D)(1)).

---

[17] Petitioner lists both Chad Lowery and Felisa Miller as number 3.  (*See* ECF No. 51-1 at PageID 11010.)

[18] Petitioner refers to the Sergeant as Nita Murphy.  (ECF No. 51-1 at PageID 11010.)

Petitioner asserts that Brandon Darse (or Darsey) observed Petitioner at the jail.  (ECF No. 51-1 at PageID 11010.)  Petitioner does not allege any information about the contact Darse may have had with Petitioner at the jail, when it occurred, or how such information would further develop his claims.  Petitioner has not demonstrated good cause for Darse's deposition (Request VIII(D)(2)).

Petitioner asserts that Lowery searched Petitioner's house immediately after the offense. (ECF No. 51-1 at PageID 11010.)  Lowery testified that, shortly after Petitioner was apprehended, he went to the home to check on the welfare of any children there, but no one was present.  *See Jordan*, 2016 WL 6078573, at *9.  Lowery discovered a loaded pistol on top of the refrigerator and saw several other weapons.  *Id.*  Lowery also saw a handwritten note which stated, "Renee got what she deserved.  Bitch.  I'm sorry.  I love you.  Thanks for being so good to me.  Love you Shelby, Sydney, Deanna.  Thanks, Mom and Dad.  You did all you could."  *Id.*  Lowery testified, on cross-examination, that when Petitioner was apprehended, Lowery "smelled alcohol or what [he] thought to be alcohol" on Petitioner.  *Id.*

Defense counsel had the opportunity to question Lowery at trial.  Counsel's ability to question a witness at the original trial generally mitigates the need for a discovery deposition.  *See Payne*, 89 F. Supp. 2d at 974; *see also Sanborn*, 289 F. Supp. 2d at 823.  Petitioner has not demonstrated good cause for Lowery's deposition (Request VIII(D)(3)).

Petitioner asserts that Miller is the supervisor of the MCSO records department and has knowledge of MCSO's record-keeping procedures and the document production in response to Petitioner's subpoena.  (ECF No. 51-1 at PageID 11010.)  As stated *supra*, Petitioner has not alleged that MCSO's document production was incomplete or demonstrated good cause for the deposition of a records custodian, especially given that MCSO has provided a business records

37

affidavit.  Petitioner has not demonstrated good cause for Miller's deposition (second Request VIII(D)(3)).

Petitioner asserts that Murphy was involved in booking Petitioner into the jail and testified that he was dazed and confused.  (ECF No. 51-1 at PageID 11010.)  Defense counsel had the opportunity to question Murphy at trial.  *See Jordan*, 2016 WL 6078573, at *12, 17.  Murphy testified that "she was around the [petitioner] for thirty minutes to one hour and described his demeanor as 'more confused, maybe not focusing, probably dazed a little bit.'"  *Id.* at *12.  She also testified that she had not had any problems with Petitioner during his incarceration and that he "had not demonstrated to her that he would be a threat to any prisoner, guard, or other human being."  *Id.* at *17.  As previously noted, counsel's ability to question a witness at the original trial generally mitigates the need for a discovery deposition.  *See Payne*, 89 F. Supp. 2d at 974; *see also Sanborn*, 289 F. Supp. 2d at 823.  Petitioner has not shown what further testimony is needed from Murphy to develop his claims; therefore, Petitioner has not demonstrated good cause for Murphy's deposition (Request VIII(D)(4)).

To the extent Petitioner seeks the depositions of unnamed MCSO employees or contractors, Petitioner has not demonstrated good cause for those depositions where no allegations have been made to demonstrate that the deposition would provide information materially related to Petitioner's habeas claims.

Petitioner has not demonstrated good cause for the depositions of MCSO employees and contractors.  Request VIII(D) is DENIED.

### E.      TDOT

Petitioner seeks documents from TDOT and the depositions of employees or contractors with information relevant to his claims, including but not limited to individuals who were present

38

at the time of the offense; who were involved in any capacity with the investigation or prosecution, compensating or providing counseling to victims or surviving family members; and who have knowledge of requests that TDOT employees not speak to defense team members.  (ECF No. 51-1 at PageID 10998-99, 11010.)

### 1.    Documents (Request III(E))

Petitioner seeks a subpoena *duces tecum* for the following information:

1.    The TDOT investigative file including materials in the main office, in local offices, or wherever maintained; and

2.    To the extent not included in the above, Petitioner seeks

a.    Awareness by TDOT personnel of Renee Jordan's romantic relationships with co-workers at TDOT before the crime;

b.    Security measures in place the day of the crime;

c.    The events that occurred at TDOT on the day of the crime;

d.    TDOT's investigation into the incident on January 11, 2005;

e.    TDOT's cooperation with law enforcement investigation into the crime;

f.    TDOT's instructions (or knowledge of instructions by anyone else) to any employees regarding communications with investigators, prosecution team members, David Jordan's defense team members, or anyone else regarding the crime;

g.    Documents, memos, e-mails, or other communication (oral or written), pertaining to the destruction of any evidence related to the David Jordan homicide investigation;

h.    Documentation related to policies and guidelines regarding taping, logging, and storing video statements;

i.    All documentation related to the testing of David Jordan's blood and urine;

j.    All property room logs and crime lab reports; and

39

       k.    All documentation that would support David Jordan's assertion that he was intoxicated at the time of the crime.

(ECF No. 51-1 at PageID 10998–99.)

Respondent argues that the request is overly broad and based on pure speculation. (ECF No. 52 at PageID 11099.) Respondent contends that Petitioner has not met his burden of showing that the requested discovery is materially related to Petitioner's habeas claims or would resolve a factual dispute that could entitle Petitioner to relief. (*Id.*)

Petitioner asserts that he has several *Brady* and IATC claims connected to the TDOT requests including his claims that counsel failed to investigate and interview witnesses present at TDOT at the time of the murders and that counsel failed to inform the trial court that the State instructed witnesses not to talk about the murders (Claim 22.14 and 22.15). (ECF No. 56 at PageID 11170.) Further, Petitioner asserts that the DA presented false testimony that TDOT employee Johnnie Emerson was "just friends" with Renee Jordan, although Emerson was having an affair with Renee Jordan, and that the DA withheld evidence that Renee Jordan was unfaithful (Claims 23.3 and 23.11). (*Id.*)

*Brady* requires the prosecution to turn over exculpatory evidence to the defense. *Brady*, 373 U.S. at 83. The duty extends to information in the possession of the law enforcement agency investigating the crime. *See Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995); *see Jamison v. Collins*, 291 F.3d. 380, 385 (6th Cir. 2002); *see also Owens v. Guida*, 549 F.3d 399, 416 (6th Cir. 2008). However, TDOT is not a law enforcement agency. Therefore, any internal investigation conducted by TDOT is not imputed to the prosecution for purposes of a *Brady* claim. Petitioner has thus not shown that his discovery requests from TDOT relate to the stated *Brady* claims.

With regard to the IATC claims, trial's counsel's file is indicative of his investigation. TDOT records would not likely indicate who Petitioner's trial counsel interviewed or what counsel told the Court.

Petitioner has not demonstrated good cause for the TDOT documents requested as he has failed to show that the requests are materially related to or resolve a factual dispute related to his habeas claims. The discovery of TDOT records (Request III(E)) is DENIED.

### 2. Depositions (Request VIII(E))

Petitioner seeks to depose TDOT employees or contractors with information relevant to his claims, including but not limited to individuals who were present at the time of the murders; who were involved in any capacity with the investigation or prosecution, compensating or providing counseling for victims or surviving family members; and who have knowledge of requests that TDOT employees not speak to defense team members. (ECF No. 51-1 at PageID 11010.) Petitioner requests the depositions of the following specific individuals: (1) David Thomas Pickard, (2) Vernon Stockton,[19] and (3) Miranda Brooks. (*Id.*) Petitioner asserts that he walked past Pickard on the way to the Crow's Nest[20] and that Pickard said he could smell alcohol on Petitioner. (*Id.*) Petitioner asserts that Stockton spoke to Petitioner on the telephone the morning of the shootings. (*Id.*) Petitioner contends that Brooks witnessed the shooting. (*Id.*)

Respondent argues that the requests for depositions of numerous unnamed individuals is overly broad and unduly burdensome. (ECF No. 52 at PageID 11106.) He objects to the

---

[19] Respondent asserts that Stockton's name is Vernon, not Leon. (*See* ECF No. 52 at PageID 11106.)

[20] Renee Jordan worked in the office of the TDOT garage, which was known as "the Crow's Nest." *State v. Jordan*, 325 S.W.3d 1, 17 (Tenn. 2010).

depositions of Pickard and Stockton because they testified under oath at trial, and their testimony is part of the record.  (*Id*.)  Further, Respondent argues that the requests are cumulative and the expense far outweighs the likely benefit.  (*Id.*)  Respondent asserts that the depositions of TDOT employees would be duplicative of the testimony of additional witnesses who testified at trial and at the post-conviction hearing, including Randy Jo Perry and George Washington Bond.  (*Id.*)  Respondent asserts that Petitioner has failed to allege what evidence Brooks will provide and how that evidence will lead to relief on his claims.  (*Id.*)

As stated *supra* with the TDOT records, the information sought through these depositions is not materially related to the *Brady* and IATC claims Petitioner asserts in support of these requests.  Defense counsel had the opportunity to question Pickard and Stockton at trial.  *See Jordan*, 2016 WL 6078573, at *3-4.  Counsel's ability to cross-examine a state's witness at the original trial generally mitigates the need for a discovery deposition.  *See Payne*, 89 F. Supp. 2d at 974; *see also Sanborn*, 289 F. Supp. 2d at 823.  Petitioner has not demonstrated good cause for further testimony from Pickard and Stockton.  Petitioner has not shown what evidence he seeks from Brooks that is materially related to his habeas claims.

To the extent Petitioner seeks the depositions of unnamed TDOT employees or contractors, Petitioner has not demonstrated good cause for those depositions where no allegations have been made to demonstrate that the depositions would provide information materially related to Petitioner's habeas claims.

Petitioner has not demonstrated good cause for the depositions of TDOT employees and contractors.  The requests for depositions (Request VIII(E)) are DENIED.

### F.   ADDITIONAL LAW ENFORCEMENT RECORDS (Request III(F))

Petitioner seeks a subpoena for the following information, wherever maintained:

1.      Documents, memos, e-mails, or other communication (oral or written), pertaining to the destruction of any evidence related to the David Jordan homicide investigation by the crime lab or any other entity;

2.      All property room logs and crime lab reports;

3.      All documentation related to the testing of David Jordan's blood and urine, including but not limited to testing done by Hopkins;

4.      All documentation that would support David Jordan's assertion that he was intoxicated at the time of the crime;

5.      All records, bench notes, X-rays, photos, videos, lab results, correspondence (including email and text messages) and any other documents relating to the autopsies of Renee Jordan, Jerry Hopper, and David Gordon; and

6.      To the extent that such records are maintained by any entity other than the Madison County Sheriff's Department, jail and prison records regarding David Jordan, including all treatment for physical or mental health and sign-in and sign-out logs for any person who had contact with David Jordan.

(ECF No. 51-1 at PageID 10999.)

Respondent argues that Petitioner's request for additional law enforcement records, wherever maintained, is overly broad and unduly burdensome.  (ECF No. 52 at PageID 11099.) Respondent asserts that the request is based on pure speculation, as Petitioner has not made any showing that these items exist.  (*Id.*)  Respondent argues that Petitioner has not met his burden of showing that the requested discovery is materially related to Petitioner's habeas claims or would resolve a factual dispute that could entitle Petitioner to relief.  (*Id.*)  In reply, Petitioner provides a "non-exhaustive" list of claims to which he contends the law enforcement records and depositions are relevant.  (ECF No. 56 at PageID 11163–65.)

Petitioner's requests for additional law enforcement records, wherever maintained, is overly broad.  Petitioner has not stated where he seeks this information and the specific habeas claim he seeks to support through it.  Petitioner has not indicated that there are law enforcement

43

records that are not within the possession of the JPD, MCSO, or TBI or that have not already been produced to Petitioner which warrant discovery. This request is truly a fishing expedition, not narrowly tailored to location, source, or a habeas claim. For these reasons, Petitioner has not demonstrated good cause. A subpoena for additional law enforcement records, wherever they are maintained. Request III(F)) is DENIED.

### G.      THE MADISON COUNTY TRIAL COURT

Petitioner asserts claims of discrimination against women, African Americans, and Hispanics in the Madison County grand jury foreperson selection process (*see* Claim 20) and IATC for failing to challenge grand juror discrimination (*see* Claim 22.1, ECF No. 13 at PageID 10357– 59). (ECF No. 51-1 at PageID 11000.) Petitioner asserts that, in Madison County, a judge had exclusive discretionary authority, under Tenn. R. Crim. P. 6, to choose the grand jury foreperson. (*Id.*) Petitioner argues that a Stipulation Regarding Grand Jury Foremen presented in the post-conviction proceedings shows that no woman, African American, or Hispanic has been selected as a Madison County grand jury foreperson between 1975 and 2014, despite their representative percentages in the county. (*Id.*; *see* ECF No. 8-77 at PageID 7598–7600.)

Petitioner seeks documents from the Madison County Court, a Rule 30(b)(6) deposition of the person responsible for grand jury selection, and the depositions of staff and individuals who witnessed the trial. (ECF No. 51-1 at PageID 11000, 11011–12.)

### 1.      Documents (Request IV)

Petitioner seeks a subpoena *duces tecum* for the following documents:

A. The trial court file;

B. To the extent not included in the above:

1.      Madison County Clerk's Office files for grand jury foreperson since 1975, including information about the race, gender, and ethnicity of the foreperson(s) since 2014;

2.      Jury commissioner's file and any documentation related to David Jordan's trial;

3.      Records from the proceedings in city court and general sessions court including docket sheets, warrant applications, affidavits in support, court orders, return, property room logs; and

4.      Records from the proceedings in trial court, including docket sheets, warrant applications, affidavits in support, court orders, return.

(ECF No. 51-1 at PageID 11000.)

Respondent argues that Claim 20, which Petitioner ties to his request for the Madison County Trial Court file and depositions of the criminal court employees, was never raised before the highest available state court and is procedurally defaulted and that Petitioner has failed to plead legally sufficient cause and prejudice to excuse the default of the claim or that a fundamental miscarriage of justice would occur if the claim was not analyzed. (ECF No. 52 at PageID 11087–88.) Respondent argues that Claim 22.1 was raised on appeal and rejected by the Tennessee Court of Criminal Appeals on the merits, and to that extent, discovery related to this claim is *Pinholster*-barred. (ECF No. 52 at PageID 11088.) Respondent asserts that the request is overly broad and unduly burdensome. (*Id.* at PageID 11087.) As stated *supra*, the Court will not bar discovery based on *Pinholster* or procedural default.

Petitioner asks for the trial court's complete file which includes documents unrelated to the selection of grand jury or the grand jury foreperson. Petitioner acknowledges that he has received a stipulation, which is in the post-conviction record, that all the grand jury forepersons in Madison County between 1975 and 2014 are "Caucasian males." (*See* ECF No. 8-77 at PageID 7599.) Petitioner has not demonstrated why discovery of the Madison County trial court file is materially

45

related to habeas claims or would resolve a factual dispute as it related to his habeas claims, where the race and sex of the grand jury foreperson over time is not in question.  Petitioner has not demonstrated good cause.

Petitioner seeks a Rule 30(b)(6) deposition for the Clerk's Office personnel responsible for grand jury selection and related processes.  (ECF No. 51-1 at PageID 11000.)  For these same reasons that Petitioner has not shown good cause for the Madison Trial Court file, Petitioner has not shown good cause for the deposition of Clerk's Officer personnel related to grand jury selection and related processes.

Request IV is DENIED.

### 2.      Depositions (Request VIII(F))

Petitioner seeks to depose court employees who have information relevant to his claims, including but not limited to his *Batson*[21] claim and the grand jury and petit jury records maintained by the court. [22]  (ECF No. 51-1 at PageID 11011.)  Petitioner seeks to depose individuals who witnessed the trial to support his allegations that he was shackled during trial and sentencing (Claim 46); that he was involuntarily medicated during the trial (Claim 24); that his constitutional rights were violated by the admission of highly inflammatory crime scene and autopsy photographs (Claim 41); and his IATC claims related to counsel's failure to object to the shackles and

---

[21] In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment precludes prosecutors from exercising peremptory challenges during jury selection solely on the basis of race.

[22] Petitioner does not identify a *Batson* claim anywhere in the motion for discovery. Further, the Court has not found a *Batson* claim in the Amended Petition.

medication and exclude the crime scene and autopsy photos from evidence (Claims 22.12, 22.55. and 22.65).  (*Id.*)

Petitioner contends that he outlined key facts in support of his claims about the crime scene and autopsy photos in his Reply to the Amended Petition, as it relates to Claim 41.   (*Id.*)  Specifically, he asserts that jurors were visibly shaking from looking at the pictures, one juror indicated that he was about to throw up, and another juror commented that he might vomit, as well. (*Id.*)  Petitioner contends that a court officer brought a juror a bag, and the court called a recess. (*Id.*; ECF No. 43 at PageID 10844–45, 10904–07.)  Petitioner contends that some jurors were so traumatized that they had to seek counsel and treatment.  (ECF No. 51-1 at PageID 11011.)

Petitioner asserts that this incident is not reflected in the record, and he needs to depose the court personnel present at the trial to support his claims.  (*Id.* at PageID 11011–12.)  Petitioner asserts that, once he obtains the court file and other documents, he will seek to interview jail personnel who accompanied him to court, the bailiff, and other court personnel.  (*Id.* at PageID 11012.)  Respondent argues that the claims upon which Petitioner relies for discovery are either procedurally defaulted or subject to *Pinholster*, and discovery should be denied.  (ECF No. 52 at PageID 11088–91, 11107.)  As stated *supra*, the Court will not bar discovery based on procedural default and *Pinholster*.

Petitioner must show good cause for this discovery.  Petitioner has not identified any court employees or individuals he seeks to depose.  The grant of this discovery requests without naming individuals with relevant information would amount to a fishing expedition.  Request VIII(F) is DENIED.

47

### H.      POST-CONVICTION DEFENDER'S OFFICE ("PCDO")

Petitioner seeks documents from the PCDO and the depositions of his post-conviction counsel and PCDO staff.  (ECF No. 51-1 at PageID 11001-11002, 11012.)  He contends that the PCDO was in continuous turmoil and that he was not able to develop the facts for some of his claims.  (*Id.* at PageID 11001–02.)  Petitioner contends that there was frequent turnover in staff and inadequate resources to hire experts needed to adequately present his federal constitutional claims.  (*Id.* at PageID 11001.)  Petitioner argues that the post-conviction trial court denied his counsel's motion to continue the evidentiary hearing so that counsel could have sufficient time to complete the investigation and prepare.  (*Id.*; *see* ECF No. 56 at PageID 11140.)  Petitioner contends that he is entitled to factual development, discovery, and an evidentiary hearing on his claims and assertions of cause to excuse procedural defaults, notwithstanding *Pinholster*.  (ECF No. 51-1 at PageID 11001.)  Petitioner asserts that the discovery sought from the PCDO is primarily to support his assertion of cause to excuse any claims that were procedurally defaulted. (*Id.*)

### 1.      Documents (Request V)

Petitioner seeks a subpoena *duces tecum* for the following documents:

A.      Office budget requests;

B.      Caseloads of attorneys, investigators;

C.      Staffing of cases and case assignments;

D.      Experience and training of attorneys and staff;

E.       Cases in which potential experts were unavailable because of funding or geographic restrictions;

F.   Documents reflecting promulgation or adoption of performance standards or guidelines, and any documents relating to compliance or departure from performance standards or guidelines;

G.   Email correspondence of PCDO employees and experts about David Jordan's case; and

H.   Personnel records for all staff from 2000 to 2017.

(ECF No. 51-1 at PageID 11001-11002.)

Respondent objects to the requests as overly broad and unduly burdensome.  (ECF No. 52 at PageID 11100.)  He asserts that the requests are based on pure speculation and are "nothing more than generalized, speculative statements about the possible existence of evidence which does not qualify as good cause for the grant of a discovery request."  (*Id.*)  Respondent argues that the requests amount to a fishing expedition and should be denied.  (*Id.*)

Petitioner is entitled to develop the facts to assert cause and prejudice under *Martinez* for unexhausted substantial IATC claims.  Therefore, documents at the PCDO about Petitioner's case are materially relevant to determinations of procedural default and the resolution of substantial IATC claims.  However, Petitioner's requests are overly broad and unduly burdensome and must be limited to the relevant period, the relevant PCDO personnel involved, and Petitioner's case.

Petitioner filed his *pro se* post-conviction petition in June 2011, and the post-conviction trial court denied relief on March 20, 2015.  (*See* ECF No. 13 at PageID 10353–54.)  The attorneys who represented Petitioner at the trial court level in the post-conviction proceedings were Bradley A. MacLean, Avram D. Frey, Kelly A. Gleason, Sarah R. King, and Stacie Lieberman.  (*Id.* at PageID 10353; ECF No. 56 at PageID 11142.)  The Court will limit discovery to information about these persons and the period from 2011-2015, when good cause has been shown as discussed below.

49

### a. Budget Requests

Petitioner has requested the PCDO's budget requests.  (ECF No. 51-1 at PageID 11001.) Not all budget requests are related to Petitioner's case.  However, to the extent that funds were not available for experts and resources needed for Petitioner's case, this information may be relevant to the ineffective assistance of post-conviction counsel in pursuing certain claims.  The Court GRANTS discovery of PCDO budget requests related to Petitioner's case during the period from 2011-2015 (*see* Request V(A)).

### b. Caseloads of attorneys and investigators

Petitioner seeks documents about the caseloads of PCDO attorneys and investigators.  (*Id.*) Information about the caseload of each attorney or investigator in the PCDO is not materially related to issues of Petitioner's post-conviction counsel's performance.  The Court GRANTS discovery of documents about the caseloads of PCDO attorneys Bradley A. MacLean, Avram D. Frey, Kelly A. Gleason, Sarah R. King, and Stacie Lieberman and of the PCDO investigators working on David Lynn Jordan's case during the period from 2011-2015 (*see* Request V(B)).

### c. Staffing of cases and case assignments

Petitioner has made no allegations and not demonstrated good cause for discovery of information on the staffing of all PCDO cases and all case assignments.  (*See* ECF No. 51-1 at PageID 11001.)  To the extent that this information may be relevant to Petitioner's case, that information is provided through the grant of information about the caseloads of attorneys and investigators working on Petitioner's case (*see* Request V(B), *supra*).  The request for documents about the staffing of cases and case assignments (*see* Request V(C)) is DENIED, except as indicated above.

### d.  Experience and training of attorneys and staff

Petitioner seeks documents about the experience and training of attorneys and staff in the PCDO's office.  (*Id.*)  Experience and training are not part of the analysis for ineffective assistance of counsel.  Deficient performance and prejudice are the relevant inquiries under *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Petitioner has not demonstrated good cause for documents about the experience and training of the PCDO's attorney and staff.  Request V(D) is DENIED.

### e.  Cases in which potential experts were unavailable

Petitioner seeks documents about PCDO cases in which potential experts were unavailable because of funding or geographic restrictions.  (ECF No. 51-1 at PageID 11001.)  The request is overbroad.  However, Petitioner has alleged IATC for counsel's failures to use experts, including the failure to:

- hire a neuroradiologist and conduct neuroimaging tests (Claim 22.5, *see* ECF No. 13 at PageID 10371);

- properly conduct an independent investigation of relevant forensic evidence including by expert analysis and testing of blood, hair, and/or urine samples (Claim 22.6, *see* ECF No. 13 at PageID 10372–73);

- investigate and present evidence establishing guilt-stage defenses based on brain damage, intoxication, and/or diminished capacity and failing to present mitigating circumstances based on brain damage and/or intoxication (Claim 22.7, *see id.* at PageID 10373–74); and

- investigate and present proof to show the true and scientifically accurate results of toxicology exams of Petitioner's blood and urine (Claim 22.8, *see id.* at PageID 10388–89).

*Martinez* can be used to overcome the purported procedural default of Claims 22.5, 22.6, 22.7, and 22.8.  (*See* ECF No. 21 at PageID 10520, 10533–34.)  Because of the *Martinez* analysis, the Court finds good cause for limited discovery about instances in Petitioner's case when the PCDO was unable to obtain experts for neuroimaging, neuroradiology, or forensic analysis of Petitioner's

blood, hair, and urine samples due to the unavailability of funding or geographic restrictions. Request V(E) is GRANTED as limited.

### f.   Performance standards or guidelines

Petitioner seeks documents about the PCDO's promulgation or adoption of performance standards or guidelines and any documents relating to compliance with or departure from performance standards or guidelines.  (ECF No. 51-1 at PageID 11002.)  The *Strickland* analysis addresses counsel's actual performance as it relates to Petitioner's case, not performance guidelines and standards within the PCDO's office.  Petitioner has not demonstrated how this request is materially related to or will develop factual issues for his habeas claims.  Petitioner has not demonstrated good cause.  Request V(F)is DENIED.

### g.   Email correspondence

Petitioner seeks discovery of the email correspondence of PCDO employees and experts about Petitioner's case.  (ECF No. 51-1 at PageID 11002.)  This information is materially related to the *Martinez* analysis and post-conviction counsel's investigation, preparation, and the strategic decisions, if any, that were made in the presentation of the Petitioner's case.  The request for email correspondence between PCDO employees and experts about Petitioner's case (Request V(G)) is GRANTED.

### h.   Personnel records

Petitioner seeks the personnel records of all PCDO staff from 2000 to 2017.  (*Id.*)  The request is overly broad as it requires information on personnel not involved in Petitioner's case, and the time frame is not appropriately limited.  Although Petitioner has described an office in turmoil, the discovery requested must be materially related to some error or deficiency in the

presentation of his case. Petitioner has not demonstrated good cause. The request for the personnel records of all PCDO staff from 2000 to 2017 (Request V(H)) is DENIED.

### 2.    Depositions (Request VIII(G)(3))

Petitioner seeks to depose his post-conviction counsel and staff at the PCDO, "including those who represented him and worked on his case, and also those who did not work directly on his case but have knowledge about the documents requested above, staffing issues at PCDO, and resources available for his case." (ECF No. 51-1 at PageID 11012.) He seeks to obtain evidence relevant to his ineffective assistance of counsel claims and to assert cause for procedural default under *Martinez*. (*Id.* at PageID 11012.)

Respondent argues that Petitioner does not state how this discovery, if granted, would establish the elements of his defaulted IATC claims. (ECF No. 52 at PageID 11107.) Respondent contends that Petitioner has not raised any substantial IATC claims and that, when these claims have not been sufficiently pled and are purely speculative, any request for discovery is insufficient to establish good cause. (*Id.* at PageID 11107–08.)

The Court has not yet determined which, if any, of Petitioner's claims are substantial under *Martinez*. Based on *Martinez*, the Court finds good cause for the depositions of Petitioner's post-conviction counsel about the IATC claims in the habeas petition that were not previously raised in the state court post-conviction proceedings and to the extent necessary to show ineffective assistance of post-conviction counsel related to those claims.

Petitioner has not identified specific staff at the PCDO whose depositions may be relevant for a *Martinez* analysis, and therefore, has not demonstrated good cause for the deposition of PCDO staff.

Request VIII(G)(3) is GRANTED, as limited for the depositions of Petitioner's post-conviction counsel and DENIED as to the unnamed PCDO staff.

## I.     CRIMINAL DEFENSE TRAINING (REQUEST VI)

Petitioner argues that discovery from the Tennessee public defender system and criminal defense bar are necessary to demonstrate the prevailing performance standards for criminal representation in Tennessee at the trial, appellate, and post-conviction level and that Petitioner's post-conviction counsel were ineffective in failing to investigate and present his meritorious claims in state court.  (ECF No. 51-1 at PageID 11002.)

Petitioner seeks a subpoena *duces tecum* for the following documents:

A. Documentation of training practices or policies in the Tennessee public defender system, including but not limited to those related to performance standards, strategies to protect clients from discrimination, effective investigation strategies;

B. Expenditures for Tennessee Public Defenders to attend third-party training for attorneys and professional staff, and a list of outside training programs attended by Tennessee Public Defender attorneys and professional staff from 2000 to 2017; and

C. TACDL[23] training agendas from 2000 to 2017.

(ECF No. 51-1 at PageID 11002.)

Respondent objects to the request as overly broad, unduly burdensome, and based on pure speculation.  (ECF No. 52 at PageID 11101.)  He asserts that the request is "nothing more than generalized, speculative statements about the possible existence of evidence which does not qualify as good cause for the grant of a discovery request."  (*Id*.)  Respondent argues that, even if the Court were to assume that these documents could establish the deficiency of post-conviction

---

[23] "TACDL" refers to Tennessee Association of Criminal Defense Lawyers.

counsel, the request must be denied where Petitioner has failed to plead legally sufficient prejudice to excuse the default. (*Id.*) Respondent asserts that the request is the type of fishing expedition prohibited by the strictures of Rule 6(a) and should be denied. (*Id.*)

Although prevailing performance standards are relevant to ineffective assistance claims and *Martinez* analysis, Petitioner's requests are overly broad and not tied to specific habeas claims in the Amended Petition. The requests for training practices and policies are not materially related to the resolution of a pending habeas claim. The request for expenditures on training bears no relation to performance standards and fails to develop the IATC claims under *Strickland* or support a *Martinez* analysis. Petitioner has not demonstrated good cause. His requests for documents about training practices and policies from the Tennessee public defender system and the criminal defense bar and for the public defender's expenditures on training (Request VI) are DENIED.

## J.    STATE COURT RECORDS ABOUT PROPORTIONALITY (REQUEST VI(2))

Petitioner seeks a subpoena *duces tecum* for state court records about the analysis of "disproportionality" of the death sentence in particular cases or statewide, including reports by judges or other state employees containing case-related data or conclusions. (ECF No. 51-1 at PageID 11002.) Petitioner asserts that the requested discovery is relevant to Claim 22.59, that his counsel was ineffective for failure to compile and present evidence showing the disproportionality of the death sentence. (ECF No. 56 at PageID 11172; *see* ECF No. 13 at PageID 10446.)

Respondent objects to the request as overly broad, unduly burdensome, and based on speculation. (ECF No. 52 at PageID 11101.) Respondent argues that Petitioner has failed to set forth what these documents or records might contain and what effect, if any, they would have on

his conviction or sentence.  (*Id.*)  Respondent contends that this request is a fishing expedition prohibited by Habeas Rule 6.  (*Id.* at PageID 11102.)

Petitioner has not asserted that a factual dispute would be resolved by the discovery of these records.  He must ultimately prove prejudice to succeed on his IATC claim.  Multiple people were killed in the TDOT shootings, and the likelihood of proving prejudice based on the requested records is minimal.  The Tennessee Supreme Court has stated that "[i]n conducting a comparative proportionality review, we begin with the presumption that the sentence of death is proportional with the crime of first degree murder."  *See State v. Austin*, 87 S.W.3d 447, 465 (Tenn. 2002) (quoting *State v. Hall*, 976 S.W. 2d 121, 135 (Tenn. 1998).)  The purpose of this review is to "identify and invalidate the aberrant death sentence."  *See State v. Godsey*, 608 S.W.3d 759, 782 (Tenn. 2001).  The "precedent-seeking method of analysis" is used for purposes of Tennessee's statutory comparative proportionality review.  *Id.* at 782.

In *State v. Dotson*, 450 S.W.3d 1, 11, 83–84 (Tenn. 2014), the Tennessee Supreme Court compared Petitioner's case to the *Dotson* case, which involved six counts of first degree murder and three counts of attempted murder which occurred at the defendant's brother's home with the victims including defendant's brother, the brother's fiancée; a half-brother, defendant's nieces and nephews, and other adults.  The court noted that these murders were "some of the most horrendous ever committed in Tennessee:"

> Considering the record in this case in light of the relevant factors, we conclude that the defendant's death sentences are not excessive or disproportionate to the penalty imposed in similar cases. While no two capital cases and no two defendants are alike, the following cases and defendants share several similarities with this case and this defendant. **State v. Jordan, 325 S.W.3d 1 (Tenn. 2010) (upholding the death sentence where the defendant shot and killed his estranged wife and two men at his wife's work place and the jury found five aggravating circumstances);** *State v. Holton*, 126 S.W.3d 845 (Tenn. 2004) (upholding the death sentence where the defendant shot and killed his four children

56

and the jury found the mass murder aggravating circumstance and, as to three victims, the under-age-twelve aggravating circumstance); *State v. Carruthers*, 35 S.W.3d 516 (Tenn. 2000) upholding the death penalty where the defendant shot two men, strangled the mother of one of the men, and buried all three victims alive and the jury found four aggravating circumstances, including prior violent felony, heinous, atrocious, or cruel, felony murder, and mass murder); *State v. Smith*, 868 S.W.2d 561 (Tenn. 1993) (upholding the death penalty where the defendant shot and stabbed his wife and two stepsons and the jury found four aggravating circumstances, including heinous, atrocious, or cruel, murder to avoid apprehension, felony murder, and mass murder); *State v. Payne*, 791 S.W.2d 10 (Tenn. 1990) (upholding the death sentence where the defendant stabbed his girlfriend's neighbor and the neighbor's two-year-old daughter and the jury found three of the same aggravating circumstances as those applied in this case).

Th[e *Dotson*] case is not identical to these earlier capital cases primarily because the murders and assaults the defendant perpetrated are some of the most horrendous ever committed in Tennessee. However, taken as a whole, this case is by no means "plainly lacking in circumstances consistent with those in similar cases in which the death penalty has been imposed." *Bland*, 958 S.W.2d at 665. Thus, we conclude that the sentences of death are not excessive or disproportionate to the penalties imposed in similar cases.

*Dotson*, 450 S.W.3d at 83–84 (emphasis added).

Petitioner has not argued that his death sentence is aberrant based on comparative proportionality review and cannot likely show prejudice on a related IATC claim, given the facts of his case as compared to *Dotson* and similar cases. Further, state courts records are not needed for this review when Petitioner can rely on published precedent. Petitioner has not demonstrated good cause for state court records about the analysis of proportionality of the death sentence in particular cases or statewide, including reports by judges or other state employees containing case-related data or conclusions. Request VI (2) is DENIED.

### K.     TRIAL & APPELLATE COUNSEL (REQUESTS VIII(G)(1 & 2))

Petitioner seeks to depose his trial and appellate counsel to obtain evidence relevant to his ineffective assistance of counsel claims and to support his *Martinez* argument of cause and prejudice to overcome procedural default. (ECF No. 51-1 at PageID 11012.) Petitioner argues

that the depositions of trial and appellate counsel are relevant to all his IATC claims.  (ECF No. 56 at PageID 1172.)

Respondent objects to Petitioner's request to depose lead trial counsel George Googe and co-counsel Lloyd Tatum because they testified extensively under oath at the post-conviction hearing, and their testimony is part of the record.  (ECF No. 52 at PageID 11107.)  Further, the request is cumulative, and the expense far outweighs the likely benefit.  (*Id*.)  For the same reasons that Respondent contends there is not good cause for the deposition of post-conviction counsel, Respondent asserts that there is not good cause for the depositions of appellate counsel.  (*Id.* at PageID 11107–08.)

Googe and Tatum testified in the post-conviction proceedings about claims that were previously brought in the state court.  To the extent that a federal habeas IATC claim has never been presented in state court, Petitioner has good cause for the depositions of trial counsel about that claim under *Martinez*.  Petitioner has good cause for the depositions of appellate counsel to the extent that Petitioner is asserting that the ineffective assistance of appellate counsel presents cause for the procedural default of a federal habeas claim.  *See Murray v. Carrier*, 477 U.S. 478, 492 (1986).  The requests for the depositions of Petitioner's trial and appellate counsel (Requests VIII(G)(1 & 2) are GRANTED as limited above.

## L.   INDIVIDUALS WHO OBSERVED PETITIONER'S DEMEANOR & STATE OF MIND (REQUEST VIII(H))

Petitioner seeks to depose "all individuals who observed or have information [about] his demeanor or state of mind at the time of the offense, including but not limited to Barbara Surratt, Renee Jordan's former mother-in-law who was on the phone with her at the time of the offense." (ECF No. 51-1 at PageID 11012.)  These depositions are in addition to those of law enforcement

officers who observed Petitioner (*see* Requests VIII(C) & (D)).  (*Id.*)  Petitioner contends that there are numerous examples of specific relevant claims about the importance of his state of mind at the time of the offense which set forth the relevance of the anticipated deposition testimony.  (ECF No. 56 at PageID 11172–73.)

Respondent argues that the requests for the depositions of "all individuals" is overly broad and unduly burdensome.  (ECF No. 52 at PageID 11108.)  He objects to the deposition of Surratt because she testified under oath at trial, and her testimony is part of the record.  (*Id.*)  Respondent contends that the request for Surratt's deposition is cumulative, and the expense far outweighs the likely benefit.  (*Id.*)

Surratt gave a statement and testified at trial about her recollection of the phone conversation with Renee Jordan that occurred during the TDOT shootings; that Surratt heard "an ungodly racket, loud noises" and heard Petitioner say "Renee. Renee. I hate you."  *Jordan*, 2016 WL 607853, at *5, 22.

Counsel's ability to question a witness at the original trial generally mitigates the need for a discovery deposition.  *See Payne*, 89 F. Supp. 2d at 974; *see also Sanborn*, 289 F. Supp. 2d at 823.  Petitioner has not shown what further testimony Surratt could offer to develop his claims.  Petitioner has not demonstrated good cause for the deposition of Barbara Surratt, especially when Surratt did not see Petitioner on the day of the TDOT shooting and could not observe his demeanor or state of mind.

Petitioner has not identified other individuals whose depositions he seeks through this request, and therefore has not shown good cause for the depositions of unnamed individuals who observed Petitioner's demeanor and state of mind at the time of the offense.  REQUEST VIII(H) is DENIED.

59

### M.      STATE WITNESSES

Petitioner seeks the depositions of Dr. Matthews, Sonny Grimm, and Paul Forsyth.  (ECF No. 51-1 at PageID 11012–13.)

#### 1.      Dr. Matthews (Request VIII(I)(1))

Petitioner seeks the deposition of Dr. Matthews, the state's forensic psychiatrist, to support Petitioner's IATC claim for failure to object to the prosecutor's questioning that conflated sanity with *mens rea* (Claim 22.44) and Petitioner's claim of trial court error for allowing Matthews to testify about statements Petitioner made at the time of his arrest (Claim 33).  (ECF No. 51-1 at PageID 11012–13.)  Petitioner alleges that Matthews' testimony is needed to support his IATC claim that counsel failed to oppose the admissibility of Matthews' testimony under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 582 (1992), and its state law equivalent (*see* Claim 22.54).  (ECF No. 56 at PageID 11151–52.)  Petitioner also alleges that his trial counsel failed to impeach Matthews about his testimony that Petitioner was not in a dissociative state at the time of the offense and other testimony about Petitioner's capacity to form the *mens rea* for the offenses for which he was convicted (*see* Claims 22.17 & 22.18).  (*See id.* at PageID 11155; *see also* ECF No. 13 at PageID 10400-10403.)

Respondent argues that Claim 22.44 was rejected by the Tennessee Court of Criminal Appeals ("TCCA") on post-conviction appeal and, therefore, discovery is barred by *Pinholster*.  (ECF No. 52 at PageID 11088-89.)  Respondent contends that Claim 33 was never raised in the state court and discovery should be barred due to procedural default.  (*Id.* at PageID 11089.)  The Court will not bar discovery based on *Pinholster* or procedural default.

Matthews testified on rebuttal at trial about Petitioner's capacity to premeditate, and that testimony is part of the state court record.  *See Jordan*, 2016 WL 607853, at *14.  The TCCA noted

that Matthews' use of forensic behavioral analysis was "generally accepted in the field of psychology." The TCCA held that the post-conviction court properly found that "trial counsel had no basis on which to challenge the admissibility of Dr. Matthews' testimony." *See id.* at *74–75. Petitioner's need for a discovery deposition has been mitigated by his counsel's opportunity to question Matthews at trial. Further, Petitioner has not shown why additional testimony from Matthews is required to develop Petitioner's claims when the purported failures are those of Petitioner's trial counsel and the trial court. Petitioner has not demonstrated good cause to take Matthews' deposition. Request VIII(I)(1) is DENIED.

## 2.   Grimm & Forsythe[24] (Request VIII(I)(2))

Petitioner seeks the depositions of Sonny Grimm and Paul Forsythe to support his IATC claims that trial counsel failed to properly cross-examine Grimm and Forsythe (Claim 22.50) and to investigate and present evidence that their testimony was false (Claim 22.51), as well as the *Brady* claim that the prosecution withheld evidence of their false testimony (Claim 23.4). (ECF No. 51-1 at PageID 11013.)

Respondent objects to Petitioner's request to depose Grimm and Forsyth because their depositions would be cumulative and duplicative as they both have testified under oath at trial and their testimony is part of the record. (ECF No. 52 at PageID 11091.) Respondent argues that the *Brady* allegation at Claim 23.4 is one of a series of single sentence subclaims that are unsupported by any allegation of materiality or prejudice and are procedurally defaulted. (*Id.*) Respondent asserts that Claim 22.50 was rejected on the merits by the TCCA because Petitioner failed to

---

[24] Petitioner spells the name "Forsyth" in the discovery memorandum. (ECF No. 51-1 at PageID 11013.) However, the TCCA spells the name "Forsythe." *See Jordan*, 2016 WL 6078573, at *3. The Court will adopt the TCCA's spelling for purposes of this Order.

question trial counsel about this issue at the post-conviction evidentiary hearing.  (*Id.* at PageID 11091–92.)  Respondent argues that Claim 22.51 was not raised until the Amended Petition and is procedurally defaulted.  (*Id.* at PageID 11092.)  He argues that discovery should not be granted to support this claim.  (*Id.*)

Grimm and Forsythe testified at trial.  *See Jordan*, 2016 WL 6078573, at *3.  Petitioner's need for discovery depositions of Grimm and Forsythe has been mitigated by his counsel's opportunity to question them at trial.  The Court further notes that Petitioner misstates Claim 22.50, which addressed the failure to cross-examine Larry Taylor, not Grimm, and confront Forsythe with discrepant testimony, *see* footnote 7 *supra*.  (*See* ECF No. 13 at PageID 10438.)  Petitioner has not demonstrated how additional testimony from Grimm and Forsythe would further develop his claims.  Petitioner has not demonstrated good cause for the depositions of Grimm and Forsythe.  Request VIII(I)(2) is DENIED.

## VI.    CONCLUSION

The following requests for discovery are DENIED:

1. Documents from the Madison County DA (Requests III(A)(1) & (2));

2. Depositions of the prosecutors and staff of the Madison County DA's office Request VIII(A)(1-4))

3. The TBI file index (Request III(B)(2)(a));

4. TBI records of all investigations involving David Jordan (Request III(B)(2)(b));

5. Depositions of TBI employees and contractors (Request VIII(B));

6. Documents from the JPD (Requests III(C)(1 & 2));

7. Depositions of JPD officers Anderson, Greer, Maxwell, Miller, Shepherd, and Thomas, Oxley, Wiley, Sain, and other unnamed JPD officers, staff members, or contractors involved with the investigation of this offense (Request VIII(C));

8. Documents from the MCSO (Requests III(D)(1 & 2));

9. Depositions of MCSO employees Martha Campbell, Brandon Darse (or Darsey), Chad Lowery, Felisa Miller, Nita Murphy, and other unnamed MCSO employees or contractors involved with the investigation of this offense, including those who interacted with Mr. Jordan and observed his demeanor and state of mind, including but not limited to, jail personnel, such as booking officer(s), medical staff, and guards (Request VIII(D)).

10. Documents from TDOT (Request III(E));

11. Depositions of TDOT employees David Thomas Pickard, Vernon Stockton, Miranda Brooks, and other unnamed TDOT employees or contractors who were present at the time of the murders; who were involved in any capacity with the investigation or prosecution, compensating or providing counseling victims or surviving family members; who have knowledge of requests that TDOT employees not speak to defense team members (Request VIII(E));

12. Additional law enforcement records wherever they are maintained (Request III(F));

13. Madison County Trial Court File and Rule 30(b)(6) deposition (Request IV);

14. Depositions of Madison County Criminal Court employees and individual who witnessed trial proceedings (Request VIII(F));

15. Documents about the PCDO's staffing of cases and case assignments (Request V(C));

16. Documents about the experience and training of the PCDO's attorney and staff (Request V(D));

17. Documents about the PCDO's promulgation or adoption of performance standards or guidelines and any documents relating to compliance or departure from performance standards or guidelines (Request V(F));

18. The personnel records of all PCDO staff from 2000 to 2017 (Request V(H));

19. Depositions of unnamed PCDO staff (*see* Request V(G)(3));

20. Documents about training practices and policies from the Tennessee public defender system and the criminal defense bar and for the public defender's expenditures on training (Request VI);

21. State court records about the analysis of proportionality of the death sentence in particular cases or statewide, including reports by judges or other state employees containing case-related data or conclusions (Request VI(2));

22. Depositions of Barbara Surrat and all individuals who observed or have information about Petitioner's demeanor or state of mind at the time of the offense (Request VIII(H));

23. Deposition of Dr. Matthews (Request VIII(I)(1)); and

24. Depositions of Sonny Grimm and Paul Forsythe (Request VIII(I)(2).

The following requests are GRANTED:

1. The TBI forensic file including documents related to Petitioner's blood, hair, and urine samples (Requests III(B)(1) & (2)(c-h));

2. The production of TBI Exhibit 101-a for independent testing by Petitioner's expert (Request VII);

3. PCDO budget requests related to Petitioner's case during the period from 2011-2015 (*see* Request V(A));

4. Documents about the caseloads of PCDO attorneys Bradley A. MacLean, Avram D. Frey, Kelly A. Gleason, Sarah R. King, and Stacie Lieberman and of the PCDO investigators working on David Lynn Jordan's case during the period from 2011-2015 (*see* Request V(B));

5. Documents about instances in Petitioner's case where the PCDO was unable to obtain experts for neuroimaging, neuroradiology, or forensic analysis of Petitioner's blood, hair, and urine samples due to the unavailability of funding or geographic restrictions (*see* Request V(E));

6. E-mail correspondence between PCDO employees and experts about Petitioner's case (Request V(G));

7. Depositions of Petitioner's post-conviction counsel, as limited above (*see* Request VIII(G)(3)); and

8. Depositions of Petitioner's trial and appellate counsel (Requests VIII(G)(1 & 2)), as limited above.

The parties are encouraged to take video depositions when it may be useful to preserve testimony for an evidentiary hearing.  Petitioner will have 180 days from the entry of this Order to complete discovery or file appropriate motions to compel.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date:  September 9, 2021